**Derrick SONNIER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71698.

Court of Criminal Appeals of Texas, En Banc.

Nov. 29, 1995.

Rehearing Overruled Jan. 10, 1996.

---

Winston E. Cochran, Jr., Houston, for appellant.

Mary Lou Keel, Assistant District Attorney, Houston, Robert A. Huttash, State's Atty., Austin, for State.

## OPINION

MEYERS, Judge.

In February 1993, appellant was tried and convicted under Texas Penal Code § 19.03 of capital murder. The offense, a double murder, was committed on September 16, 1991. The jury affirmatively answered the special issue submitted under Article 37.071 § 2(b)(1).[1] Appellant was sentenced to death as mandated by Article 37.071 § 2(g). Article 37.071 § 2(h) provides direct appeal to this court. Appellant raises thirteen points of error. We affirm.

### I. Sufficiency of Evidence

In his first point of error appellant challenges the sufficiency of the evidence to establish his guilt beyond a reasonable doubt of capital murder. In point of error four appellant challenges the sufficiency of the evidence to affirmatively answer the first special issue (continuing danger). Art. 37.071 § 2(b)(1).[2]

Sufficiency reviews of either the guilt-innocence or sentencing stages of a trial require that, while viewing the evidence in the light most favorable to the verdict, we ask whether evidence exists from which any rational trier of fact could have made the challenged finding beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Nelson v. State,* 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993). The jury is the sole judge of the weight of the evidence and may choose to believe all, some, or none of it. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim.App.1991). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986). Because the arguments raised are best understood in context of the evidence presented at appellant's trial, we briefly review the facts of the offense as established at trial and in the light most favorable to the verdict.

### The Evidence

Shortly before 2:00 p.m. on September 16, 1991, Melody Flowers received a telephone call at her apartment, number 88, from her sister. Melody informed her sister that she had just returned from an errand and was preparing herself and her two infant children Patrick, two years old, and Morgan, one year old, for a nap. Around 3:00 p.m. Morgan was discovered crying at the door of her apartment by a neighbor, Henderson. Henderson thought the situation odd and attempted to find Melody. Unable to find her, he peeked into her window and saw blood. He went to get the apartment manager. The manager entered the apartment, saw blood everywhere and immediately called the police. When the police arrived, they discovered the bodies of Melody and Patrick submerged in the bathtub. Patrick had been stabbed to death. Melody had been bludgeoned with a hammer, strangled, stomped, and stabbed.

Another neighbor, Thomas, who had been sitting outside, informed the police that between 2:15 and 3:00 p.m. he had seen appellant walking toward a field near the apartment complex. Thomas stated that appellant had a bloody towel wrapped around one hand and was carrying a "Fiesta" grocery store bag with a cardboard soda carton sticking out of it. When Thomas called out in greeting to him, appellant ignored him and continued in a hurried pace. Thomas told the police that when appellant reached the cor-

---

1. All article references are to the Texas Code of Criminal Procedure unless otherwise indicated.

2. Appellant committed the offense sixteen days after the amended version of Article 37.071 became effective on September 1, 1991. The deliberateness special issue was replaced with the continuing danger to society special issue.

ner of the building, he stopped, peeked around the corner, and looked behind him before continuing.

Henderson testified that soon after the bodies were discovered, he saw appellant walking toward his apartment with a bloody towel wrapped around his hand. Henderson asked him if he had heard about Melody Flowers. Appellant answered "no." Henderson testified that he told appellant that "something" had happened to Melody Flowers. Henderson specified that "something" had happened because he did not know at that point what had happened.

D. Mosley testified that her middle school let out at 2:40 p.m. and that when walking home, she saw appellant walking along the road adjacent to the apartments and an open field. Appellant was not carrying anything. D. Mosley allowed herself into her apartment, number 90, where she lived with her mother and appellant. Appellant arrived a few minutes later. His hand was wrapped in a bloody towel. When D. Mosley asked about the injury, appellant ignored the question, but a few minutes later appellant yelled from the kitchen that he had at that moment cut his hand. Appellant told D. Mosley that he thought something was wrong with Patrick and Melody Flowers.

When the police knocked at the front door, appellant answered the door and immediately stated "I didn't hurt her." When the police asked him what had happened to his hand appellant answered that he had cut it while slicing sausage. D. Mosley testified that she, not appellant, had sliced the sausage, that was cooking when the police arrived. Appellant's cut required nine stitches.

When L. Mosley arrived home, she consented to a police search of her apartment. The police discovered a bloody teddy-bear towel, a bloody Garfield towel, and a bloody blouse in a trash bag in Mosley's hall closet. L. Mosley identified the teddy-bear towel as hers, but denied ownership of the Garfield towel and the blouse. L. Mosley informed the police that her friend, Melody Flowers, owned Garfield towels and a blouse like the one found in her trash.

T. Knowles, Melody Flowers' boy-friend, testified that Melody kept a set of Garfield towels like the one found in Mosley's apartment. He testified that he had given the bloody blouse found in L. Mosley's closet to Melody.

Searching the field between the apartment complex and the middle school, the police discovered a "Fiesta" grocery sack with a soda carton sticking out of it under a bush. It contained a bloody piece of cord, a pair of bloody shoes, a pair of bloody socks, bloodied shorts and a bloodied shirt. L. Mosley testified that when she had left for work around 2:00 p.m. on the day of the offense, appellant had been wearing unsoiled clothes identical to those discovered in the bag. She identified the shoes as some she had given to appellant.

A. Flowers, the eighteen-year-old niece of Melody Flowers, testified that when she had spent the summer with her aunt, there had been several encounters between appellant and her aunt. On one occasion appellant had accosted A. Flowers and her aunt with lewd comments about their attire. On another occasion she and her aunt had been in the living-room when they heard a noise in the bedroom. They discovered appellant in the bedroom. When Melody, naturally upset by the intrusion, demanded to know what appellant was doing in her home, he laughed and responded that she was scared. A. Flowers also recounted that on another occasion her aunt, her nieces and nephews, and she were lying on her aunt's bed watching television. After a few hours, at about 11:00 p.m., they were startled by a rapping on the wall. To their horror, they discovered appellant hiding in the closet of the bedroom. He had been there at least three hours. Again appellant responded to Melody's visible and verbal anger by remarking that she was scared.

S. Flowers, eight-year-old daughter of Melody, testified that on her birthday, she had been hiding balloons in her mother's bedroom closet and was startled by appellant standing just outside of the sliding door of the bedroom. He was looking into the bedroom. When she returned with her mother, they found appellant in the bedroom closet. T. Knowles testified that Melody Flowers

had expressed fear of appellant and that he had warned her to stay away from him.

Dr. T.J. Brown, pathologist, testified that Melody Flowers suffered four fatal injuries, each of which could have caused her death. She sustained blunt trauma to the head. A hammer head with human hair was found in the victims' apartment. The victim suffered blunt trauma which crushed her neck bones; she was stomped on the chest and neck. She suffered asphyxia due to both manual and ligature strangulation; a bloody cord was found in the "Fiesta" grocery bag. Melody was also fatally stabbed twice in the chest. The bloodied condition of the victims' apartment and the multiple ligature marks on Melody's neck indicated that she had struggled fiercely for her life. The strangulation, beatings, blunt trauma to the head, and the stabbing all occurred before Melody Flowers died.

Patrick Flowers' death was caused by two stab wounds to the chest, one of which penetrated the heart. Because of the profuse bleeding caused by the wound to the heart, Patrick probably died within a minute of receiving the wound.

A blood splatter expert testified that there was no evidence of blood splatter in the master-bedroom, only a blood soak on the bed consistent with someone having been stabbed on the bed. In the childrens' bedroom there was blood a soak and a drag mark consistent with a small body having been stabbed on the bed and then dragged off. In the living-room the blood stains indicated that someone had fallen, bleeding, and was there beaten or stabbed. Blood splattering in the bathroom was consistent with someone having been bludgeoned there.

Blood, semen and DNA testing was mostly inconclusive. Appellant could neither be positively connected to the offense through this scientific evidence nor be positively ruled out as a suspect. However, DNA testing did establish that blood taken from one of the socks in the grocery store bag matched the blood of Melody Flowers, but could not have been appellant's own blood.

### Evidentiary Sufficiency of Guilt

In point of error one, appellant alleged the State's evidence did not establish beyond a reasonable doubt that he committed the offense. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Tex.Penal Code § 2.01. Appellant acknowledges that in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), we abandoned the *reasonable alternative hypotheses* analysis for reviewing the sufficiency of circumstantial evidence, but nevertheless urges us to return to that analysis when reviewing circumstantial evidence. He argues that the reasonable alternative hypotheses analysis is more workable, meaningful, and accurate than the *Jackson* standard. After careful review of appellant's arguments we remain convinced that our decision to abandon the alternative hypotheses analysis was correct and refer appellant to our thorough discussion of our decision. *Geesa*, 820 S.W.2d at 155–161.

Though the evidence against appellant was entirely circumstantial, it was nevertheless extremely incriminating: Appellant had stalked the victim, several times entering her apartment and hiding for hours in her closet. He apparently took delight in frightening her. He was at the scene of the crime at the time of the offense with a serious cut on his hand, and acting peculiarly. The victim's bloodied clothes were found in his apartment, and his own blood stained clothes, soiled with the victim's blood, were found in a vacant lot near his apartment. Appellant was seen discarding the bag in which his bloodied clothes were discovered around the time of the murders. The evidence supports a rational finding, beyond a reasonable doubt, that appellant committed the charged offense. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. **Appellant's first point of error is overruled.**

### Evidentiary Sufficiency at Sentencing

Article 37.071 § 2(b)(1) requires the jury to answer "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." The State presented no evidence of appellant's danger to society besides the facts of the offense; but

we have held that the circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the probability of future acts of violence and may alone establish an affirmative answer to the special issues. *Flores v. State*, 871 S.W.2d 714, 716 (Tex.Crim.App.1993) *cert. denied*, —— U.S. ——, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994).

First, appellant argues that our precedent, holding that the facts of the offense alone may be sufficient to establish an affirmative answer to the dangerousness special issues, is inapplicable to his case. Appellant notes that under the previous version of Article 37.071, when a jury considered the danger posed to society by a defendant, they had already determined that he had committed the murder deliberately. Appellant argues that since a finding of deliberation is no longer required, *see* Article 37.071 § 2(b), the facts of the offense may no longer alone support, beyond a reasonable doubt, the finding that a defendant is a future danger.

This argument has some merit in terms of the weight of the evidence; a murder committed deliberately is more probative of future dangerousness than evidence of a murder committed intentionally. But, the weight given to particular evidence is within an individual juror's prerogative and not an appropriate consideration in reviewing the sufficiency of evidence. *Chambers*, 805 S.W.2d at 461. Since an appellate court may not properly assign weight to particular evidence, it would have been inappropriate for us to hold that evidence of an offense committed with deliberation can support a finding of future dangerousness merely on the assumption that it is more probative of future dangerousness than evidence of an offense committed only intentionally. Moreover, nothing in that precedent indicates that the finding of deliberation was a significant consideration in our holdings. We do not deny that evidence of a murder committed with calculation, deliberation, or premeditation is evidence of future dangerousness. We merely reject the suggestion that the absence of a formal finding of deliberation by itself renders the facts of the offense alone incapable of supporting a finding that a defendant is a continuing threat to society. *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App.1987).

Next, appellant argues that at most the evidence presents only an isolated incident of rage and proved nothing about his potential for future acts of violence. Appellant ignores that the extreme brutality and violence of his offense betray a "most dangerous aberration of character which would support a jury's affirmative finding" that he is a continuing danger. *Tucker v. State*, 771 S.W.2d 523, 527 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). Appellant heinously murdered M. Flowers and her two-year-old son. M. Flowers' murder involved needless and vicious brutality; Appellant stabbed, strangled, bludgeoned her head with the claw of a hammer, and crushed her neck by stomping it. The condition of the apartment suggested that appellant followed M. Flowers, stabbing and beating her, throughout her apartment as she apparently struggled for her life and the lives of her children. The murder of P. Flowers, an infant still learning to speak, was wanton; the infant was fatally stabbed through the heart as he lay on his bed and his body was dragged to the bathroom where it was tossed in the bathtub atop his mother's corpse. He was stabbed eight times. The jury could rationally conclude from the results of appellant's isolated incident of rage that his rage is of such an uncontrollable and extreme nature that he is a continuing danger to society. *See, Joiner v. State*, 825 S.W.2d 701, 704 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993) (One victim was found to have been stabbed four times in the chest and further received a series of lacerations on her neck. The other victim suffered forty-one stab wounds to her chest, blunt force trauma to her head, lacerations to the head, and, her throat had been slashed); *Cass v. State*, 676 S.W.2d 589, 593 (Tex.Crim.App.1984) (Shocking circumstances of the offense established continuing danger to society); *King v. State*, 631 S.W.2d 486 (Tex.Crim.App.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982) (remorseless brutality of the manner in which he obliterated another human life

evinced continuing danger to society). **Appellant's fourth point of error is overruled.**

### Jury Selection

■ In point two, appellant argues that the trial court committed reversible error in not permitting him to question the venire regarding the mandatory imprisonment of thirty-five years if he was given a life sentence. Appellant argues on appeal that the question was proper and necessary to the intelligent exercise of challenges for cause and peremptory strikes. However, we have recently held that "[a]bsent a federal constitutional requirement to the contrary, it will remain the policy of Texas not to officially inform jurors of the actual consequences of a life sentence." *Smith v. State,* 898 S.W.2d 838, 849 (Tex.Crim.App.1995), *Broxton v. State,* 909 S.W.2d 912 (Tex.Crim.App.1995), *Reh'g denied, Broxton v. State,* No. 71,488 (Nov. 15, 1995). Accordingly, because jurors are not entitled to consider these consequences in deliberating their verdict, their attitude toward the mandatory imprisonment law about which appellant wished to question them was irrelevant to the intelligent exercise of peremptory challenges in the case. Appellant's second point of error is overruled.

### Video Tape and Photographs

Appellant avers in point of error three that the trial court erred in admitting into evidence video recordings and photographs of the bodies of the victims as they were discovered. Appellant argues that the prejudicial nature of the photographs greatly outweighed their probative value. Tex. R.Crim.E. 403. The State argues that error was not preserved for review and alternatively that the trial court did not abuse its discretion because the prejudicial value of the evidence did not outweigh its probative value.

■ Regarding the video recording, which apparently depicts the scene of the crime as it was discovered, we agree that appellant has not preserved error. When the video recording was introduced appellant offered only a general objection to the entire recording; on appeal he complains only of the depiction of the victims' bodies, as found, in the bathtub. When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection. *Brown v. State,* 692 S.W.2d 497, 501 (Tex.Crim.App.1985). Moreover, under Rule 50(d) of the Texas Rules of Appellate Procedure, it is appellant's burden "to see that a sufficient record is presented to show error requiring reversal." This means that appellant must designate for the record on appeal all that is necessary for our review. *See also* Tex.R.App.Proc. 51 and 53. The record does not contain the original or certified copy of the video recording. Having failed to enter a definite objection at trial and to designate a sufficient record to comply with the rules of appellate procedure, appellant presents no error for our review regarding the video recording of which he complains.

■ The Texas Rules of Criminal Evidence, Rule 403 provides that although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury. Several factors may be considered in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs including

> ... the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed [, and] ... the availability of other means of proof and the circumstances unique to each individual case.

*Emery v. State,* 881 S.W.2d 702, 710 (Tex. Crim.App.1994) (emphasis added), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995) quoting *Long v. State,* 823 S.W.2d 259, 272 (Tex.Crim.App.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). Ultimately, the admissibility of photographs over any challenge is within the sound discretion of the trial judge. *Jones v. State,* 843 S.W.2d 487, 500 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

*Narvaiz v. State,* 840 S.W.2d 415, 428–430 (Tex.Crim.App.1992); *Burdine v. State,* 719 S.W.2d 309, 317 (Tex.Crim.App.1986).

■ The four photographs of which appellant complains depict the victims' bodies as discovered in the bathtub filled with bloodied water. Exhibit 99–MM focuses on the body of Melody Flowers with part of Patrick Flowers' body visible in the picture. Exhibit 99–NN depicts the corpse of P. Flowers thrown atop his mother's corpse with his head submerged in the bloody water. Exhibit 88–OO depicts the blanket which was thrown over the bodies. And, exhibit 88–PP is a close-up of M. Flowers' nude corpse; a stab wound to the chest is visible. According to the briefs the original exhibits were 8 × 10, color photographs presented together as a single exhibit. Nothing was depicted in the photographs which was not also included in the testimony of various witnesses. Appellant does not allege any tampering, enhancement, or attempt by the State to inflame, confuse, or mislead the jury in its presentation of the photographs.

■ The photographs are gruesome. That is to say, they are disagreeable to look at, but they depict nothing more than the reality of the brutal crime committed. The photographs are powerful visual evidence, probative of various aspects of the State's theory of the offense including the brutality and heinousness of the offense. Appellant must realize that it is precisely the quality which we describe as "powerful" which gives rise to his arguments that the photographs are prejudicially inflammatory. But when the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome. *Burdine,* 719 S.W.2d at 316; *Narvaiz,* 840 S.W.2d at 429. The trial court did not abuse its discretion in admitting the vid-

eo recording or photographs of which appellant complains. **Appellant's third point of error is overruled.**

■ In point of error five appellant argues that Article 37.071 as amended is violative of the Eighth and Fourteenth Amendments to the United States Constitution. Appellant argues the deletion of the deliberateness special issues [3] regresses from the safeguards against "wanton" and "freakish" application of the death penalty found in the former Article 37.071, with the result that the assessment of the death penalty has once again become unacceptably arbitrary and erratic. *See Branch v. Texas,* decided with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Acknowledging that in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the United States Supreme Court held that our capital punishment scheme was not unconstitutional, arbitrary or erratic, appellant argues that *Jurek* is no longer controlling because of the amendments to Article 37.071.

In *Jurek* the Supreme Court focused on two aspects of our sentencing scheme. First the court focused on the narrow statutory definition of capital murder found in Section 19.03 of the Texas Penal Code. *Id.* at 270–271, 96 S.Ct. at 2955–2956. Thereafter, Justice Stevens, writing for the Court, focused on Article 37.071 asking whether it provided a vehicle for consideration of mitigating evidence; focusing entirely on the second special issue (future dangerousness), he found it could provide a sufficient vehicle for the consideration of mitigating evidence. *Id.* at 271–273, 96 S.Ct. at 2956–2957. The *Jurek* court in no way suggested that the question of deliberation was pivotal to its decision; to the contrary, an honest reading of the opinion suggests that the question of deliberation was irrelevant to the Court's concerns and analysis under *Furman.*

In *Jurek,* the Supreme Court held:

**3.** Prior to September 1, 1991, Article 37.071(b)(1) required an affirmative answer to the question

whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expec-

tation that the death of the deceased or another would result.

See also Art. 37.0711. For offenses, like appellant's, committed on or after September 1, 1991 this special issue was deleted.

Thus, Texas law essentially requires that one of five aggravating circumstances be found before a defendant can be found guilty of capital murder, and that in considering whether to impose a death sentence the jury may be asked to consider whatever evidence of mitigating circumstances the defense can bring before it. It would appear that, as in Georgia and Florida, the Texas capital-sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death.

428 U.S. at 273–274, 96 S.Ct. at 2957. There is nothing in the amendments to Article 37.071 which would change this holding. Indeed, the addition of the new special issue regarding mitigating evidence brings Article 37.071 into further compliance with the concerns of the Eighth Amendment as expressed by the Supreme Court in *Jurek.* **Point of error five is overruled.**

█ In points of error six and eight, appellant respectively challenges the constitutionality of Article 37.071 under Article I, Section 13 of the Texas Constitution, which states that cruel or unusual punishment shall not be inflicted, and Article I, Section 3, guaranteeing equal protection of law. Appellant raises the same arguments in point of error six that he raised under point of error five, and in point eight identical arguments as raised under point seven. Appellant adds that even if he does not prevail under the federal constitution, he prevails under the broader protections of the Texas Constitution.

Appellant provides no arguments or authorities supporting his position that the Texas Constitution offers greater protections against cruel and unusual punishment and broader understanding of equal protection than does the United States Constitution. Appellant argues that we should hold that the Texas Constitution offers greater protections merely because we have the authority to do so. Appellant argues that we have a responsibility to do so in the face of an increasingly conservative United States Supreme Court.

█ That we have the authority to find that the protections offered by the Texas Constitution are broader than corresponding protections of the federal constitution, does not prove that, in fact they are so. Before we exercise our authority, appellant must present argument and authority convincing us that his assertions of greater protection are in fact correct. In the case at bar, appellant proffers no such argument or authority. Without such argument or authority, not only is his argument unconvincing, it is also inadequately briefed. *Narvaiz v. State,* 840 S.W.2d 415 (Tex.Crim.App.1992); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991); *Morehead v. State,* 807 S.W.2d 577, 579 n. 1 (Tex.Crim.App.1991); *McCambridge v. State,* 712 S.W.2d 499, 501–502 n. 9 (Tex.Crim.App.1986); Tex.R.App. Proc. 74 and 210. We decline to pursue appellant's arguments for him. **Appellant's sixth point of error is overruled.**

█ In points of error seven and eight, appellant argues that the amendments to Article 37.071, particularly the elimination of the first special issue (deliberation), are violative of the equal protection guarantees of the federal and state constitutions, respectively. Appellant argues that the equal protection of law entitles him to the same procedures as all similarly situated defendants, i.e., all those being tried for capital murder at the same time. Appellant argues that the peculiar effective date of Article 37.071 has created a situation in which two capital trials conducted on the same day may follow different procedure depending on the date the offense was committed. This situation is not violative of appellant's right to equal protection.

█ The Equal Protection clause of the federal constitution requires that "all persons similarly situated shall be treated alike" under the law. *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Thus, to initiate his claim appellant must establish that he is not being treated the same as others "similarly situated." *See Dobbert v. Florida,* 432 U.S. 282, 302, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977). But, appellant was treated in the same manner as all those

who committed a capital murder after September 1, 1991; that is, he is treated the same as all those "similarly situated." *See also, Dinkins v. State,* 894 S.W.2d 330, 341 (Tex.Crim.App.1995). Regarding his equal protection claim under Article I, Sect. 3 of the Texas Constitution, appellant concedes that to the extent we have addressed Article I, Section 3 we have found no broader protections than those contained in the Fourteenth Amendment. *Rucker v. State,* 170 Tex.Crim. 487, 342 S.W.2d 325 (1961). Appellant presents no compelling reason to divert from this precedent. **His seventh and eighth points of error are overruled.**

■ In his ninth point of error, appellant argues that the trial court erred in instructing that the jury was not to consider or discuss the parole ramifications of a life-sentence and in failing to instruct the jury that a life-sentence carries a mandatory minimum thirty-five years imprisonment. Appellant cites no authority supporting his arguments other than general allegations that his sentence violates the proscriptions against cruel and unusual punishment in the federal and state constitution.

Appellant ignores the strong body of jurisprudence holding that parole is not a proper jury consideration in capital murder deliberations. We have repeatedly held that "in Texas, parole is not a matter for a jury's consideration in a capital murder trial." [4] *See e.g., Smith v. State,* 898 S.W.2d 838 (Tex.Crim.App.1995), *cert. denied* — U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). Recently, in *Smith* we rejected arguments that the prohibition against the consideration of parole violates constitutional prohibitions against cruel and unusual punishments. *Smith,* 898 S.W.2d at 846. Appellant pres-

ents no factual or legal distinctions that remove his case from the authority of this precedent. Appellant presents no reversible error; **his ninth point of error is overruled.**

■ In point of error ten, appellant alleges that the trial court committed reversible error in failing to charge the jury with an "application paragraph." We deduce that appellant's challenge is to the punishment charge. Appellant does not argue that an application paragraph was made necessary by a particular issue raised in his case. He argues that an application paragraph is always required in jury charges, and that its exclusion is always reversible error. Appellant relies on *Williams v. State,* 547 S.W.2d 18, 19 (1977).

*Williams* stands for the proposition that a trial court must include an application paragraph in its jury charge at the guilt-innocence phase of trial. But, appellant's case involves a punishment-charge in a capital murder trial in which the State sought the death penalty; this presents vastly different factual and legal concerns from those addressed in *Williams.*

Firstly, no statutory authority requires an application paragraph in the punishment charge of a capital murder trial. Article 36.14 governs the jury charge at the guilt-innocence phase of a trial, but the punishment phase of a capital trial is governed by Article 37.071. Article 37.071 is "so to speak, a formbook presentation of that which must be submitted to the jury" without "mention of objections to or requested instructions for inclusion in the charge, nor any reference back to other procedural rules." *Johnson v. State,* 629 S.W.2d 731, 733 n. 16 (Tex.Crim. App.1981) (Judge Clinton dissenting).[5]

---

4. *Jones v. State,* 843 S.W.2d 487, 495 (Tex.Crim. App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993); *Ellason v. State,* 815 S.W.2d 656, 665, n. 5 (Tex.Crim.App.1991); *Stoker v. State,* 788 S.W.2d 1, 16 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

5. Contrast for example, Article 37.07, which governs the punishment charge in non-capital trials; Article 37.07 § 3(b) states that "the court shall give such additional written instructions as may be necessary and the order of procedure and the

rules governing the conduct of the trial shall be the same as are applicable on the issue of guilt or innocence." Article 37.071 has no comparable provision. The absence of provisions for additions to the instructions required by Article 37.071 or for objecting or preserving error to the instructions has necessitated citation by analogy to Article 36.14 in resolving some procedural questions arising under Article 37.071. *See e.g., Miniel v. State,* 831 S.W.2d 310, 318 (Tex.Crim. App.), *cert. denied,* 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992) (preservation of error requirements).

Secondly, noting that the purpose and the structure, as prescribed in Article 37.071, of a punishment charge in a capital trial are unique and distinct from a guilt-innocence charge, we conclude that the rationale in *Williams* is applicable to the present case. Judge Onion, writing for the court in *Williams,* explained that to properly apply the law to the facts, it is necessary for a neutral party, the court, to guide the jury with an "application paragraph" which explained to the jury what conduct they must find to establish the alleged offense according to the legal definition of that offense. *Williams,* 547 S.W.2d at 20. This rationale is not applicable to the punishment phase of a capital murder trial. While a jury needs guidance to recognize evidence relevant to the legally defined elements of a particular offense, it can readily grasp the relevance of evidence to the special issues.

Thus, we conclude that for a punishment charge in a capital murder an application paragraph is neither necessary nor authorized. Of course, we do not foreclose the possibility that a situation may arise in which such instructions may be necessary. What we hold today is simply that appellant has not presented such a situation. **Point of error ten is overruled.**

■ Appellant avers, in point of error eleven, that the trial court reversibly erred in providing an incomplete *Geesa* instruction in its punishment charge. 820 S.W.2d at 162. Appellant alleges without explanation that the incomplete instruction on the meaning of beyond a reasonable doubt violated the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution and the corresponding provisions of the Texas Constitution.

According to the record, the trial court instructed the jury on the first special issue as required by Article 37.071. The trial court added that the State must prove an affirmative answer beyond a reasonable doubt and explained

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs ... Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

Assuming for argument, that *Geesa* is applicable to the punishment charge of a capital trial, our own review of the record reveals that the instruction given was in substantial compliance with *Geesa;* it was appropriately amended to fit the punishment phase of a capital murder trial. In the instruction given, some of the paragraphs contained in the *Geesa* instruction were deleted, but these paragraphs were designed for the guilt-innocence charge and therefore inappropriate for a punishment charge under Article 37.071.[6] **Appellant's eleventh point of error is overruled.**

■ In point of error twelve appellant alleges that the trial court erred in denying his motion for a new trial, "in that a bad decision by the appellant had such severe consequences that, in all fairness, trial counsel would not have acquiesced to the appellant's wishes if the legal consequences had been understood." The gravamen of this argument is appellant's decision not to allow his counsel to present any "mitigating" evidence during his sentencing trial. His attorney testified as follows:

Mr. Morris and I have discussed presenting witnesses on behalf of Mr. Sonnier, those witnesses being various family members of Mr. Sonnier. We have advised Mr. Sonnier of our desire to present those witnesses on his behalf in his best interest, especially at this part of the trial, punishment phase of trial. Mr. Sonnier has advised us that he does not want us to put on any witnesses or put forth any evidence or testimony in regards to the defense at this stage of the trial.

Appellant does not allege any impediment to the voluntariness of this decision. He mere-

___

6. Moreover, appellant concedes that this particular complaint was not raised at trial, but argues that it was egregious error. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984).

ly alleges that in retrospect, he realizes it was a mistake not to allow his counsel to present mitigating evidence. Appellant does not argue that actual mitigating evidence existed at the time of his trial; he merely asserts that he would on retrial "muster whatever *Penry* evidence might be available."

 Life is full of choices which in retrospect are regrettable. The law, however, does not recognize this truth as grounds for reversal of a criminal conviction. To the contrary, the basic principle underlying our criminal justice system is that each citizen is free to make choices, even if the choice is clearly a mistake. *See Hubbard v. State,* 739 S.W.2d 341, 345 (Tex.Crim.App.1987) (upholding appellant's right to self-representation, albeit questioning the wisdom of forgoing counsel's expertise in prosecuting an appeal). Neither the trial court nor appellant's attorney was free to override appellant's choice, and we have no authority to review appellant's choice; a defendant's knowing and free choices are owed absolute deference. **His twelfth point of error is overruled.**

In point of error thirteen, appellant argues that the trial court erred in overruling his objection to the State's reference during its closing argument at punishment to appellant's failure to produce witnesses to testify on appellant's behalf. Appellant does not specify to which part of the State's argument he objects, but we surmise that he objects to the following remarks:

> [The defense] said if there were information about this defendant's criminal past you know I would have brought it. And, you know, certainly I am the only one with any burden of proof here, and they are in no way responsible to bring any evidence, but the other side of that coin is if there was a parade of character witnesses to say what a fine man this is, you know you would have heard those, too.

Appellant's complaint is meritless. It is within the bounds of permissible jury argument for the State to comment on an appellant's failure to call competent and material witnesses. *Albiar v. State,* 739 S.W.2d 360 (Tex.Crim.App.1987). Appellant concedes

that under *Albiar,* the State's argument was proper, but he nevertheless, "recommends" that we overrule *Albiar.* We decline to overrule precedent without a compelling reason. **Point of error thirteen is overruled.**

The judgment of the trial court is affirmed.

CLINTON, J., concurs in the result.

BAIRD, J., concurs with note:

BAIRD, J., concurs. I concur in the disposition of the fifth point of error for the reasons stated in *Green v. State,* 912 S.W.2d 189 (Tex.Cr.App.1995) (Baird and Overstreet, JJ, concurring). I concur in the disposition of points of error seven and eight for reasons stated in *Dinkins v. State,* 894 S.W.2d 330, 341 (Tex.Cr.App.1995). I concur in the disposition of point of error nine for the reasons stated in *Smith v. State,* 898 S.W.2d 838, 855 (Tex.Cr.App.1995) (Baird, J., concurring). I concur in the disposition of point of error eleven for the reasons stated in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1984). I join the remainder of the opinion.