Opinion issued February 5, 2009

 










In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00386-CR

 





JARRETT DELAINE DRIVER, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 1048084






MEMORANDUM OPINION




 A jury convicted appellant Jarrett Delaine Driver, of capital murder. (1) The jury
also assessed punishment at life imprisonment, the only punishment allowed because
appellant was a juvenile certified to be tried as an adult. (2) In three points of error,
appellant argues that the trial court erred (1) in denying appellant's Batson challenge
for excluding two African-American venire members; (2) in admitting hearsay
evidence in violation of the Sixth Amendment and Rule 802 of the Texas Rules of
Evidence and (3) in admitting prejudicial photographic evidence in violation of Rule
403 of the Texas Rules of Evidence. 

 We affirm.Background

 Appellant, Jarrett Delaine Driver, entered Dina's Donuts, the business of the
complainant Bunrith In, on August 13, 2005 at approximately 4:30 a.m. Appellant,
a frequent customer of Dina's Donuts, ordered five breakfast tacos from the
complainant's wife, Mon Meach. Meach asked appellant if he would like to have his
tacos heated. After appellant agreed to have the tacos heated, he pointed a gun to
Meach's forehead, cocked the gun, and attempted to fire the gun at Meach. The
complainant moved from another work area in the shop and went to the register area
where appellant was threatening Meach. The complainant pulled Meach away and
asked appellant what he wanted. Appellant demanded money, and the complainant
opened the cash register and gave appellant twenty dollars. After appellant confirmed
that twenty dollars was the extent of the complainant's holdings, appellant demanded
the tacos. After the complainant handed appellant the tacos, appellant slapped the
tacos from the complainant's hands, brandished a knife, and chased the complainant
and Meach around the store. The complainant then confronted appellant and they
began to fight. The complainant fell to the ground, and appellant ran out of the shop. 
Meach locked the door and called 911, but the complainant died at the scene.

 Baytown Police Detective Charles Widner, Jr. interviewed Meach on three
separate occasions prior to trial. Meach, a person of Cambodian descent with limited
English proficiency, required an interpreter for each interview. Meach's relatives
translated for Meach in the first interview with Widner; a Cambodian interpreter
employed by the Houston Police Department translated in the second interview, and
Nimol In, the daughter of the complainant and Meach, translated for Meach in the
third interview. Widner brought a photo array that included appellant's photo to the
third interview, which was held in Meach's home on August 17, 2005. Meach, with
Nimol In serving as translator, identified appellant as the complainant's assailant at
that interview. When Meach identified appellant, she tapped the photo, and Widner
then circled it. Police arrested appellant at his residence on August 17, 2005, at
approximately 8:40 p.m.

 Meach testified at appellant's trial, where she was subject to cross-examination. 
She again identified appellant as the assailant, this time in response to questions
translated by an interpreter supplied by the trial court. 

Batson Challenge

 In his first point of error, appellant argues that the trial court erred in denying
appellant's Batson challenge to the State's use of peremptory strikes against venire
members Winfield and Ellis. See Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct.
1712, 1719 (1986). 

 Standard of Review

 We review the trial court's decision in response to a Batson challenge with
great deference and will not overturn the trial court's ruling unless the decision is
clearly erroneous. Mathis v. State, 67 S.W.3d 918, 924 (Tex. Crim. App. 2002)
(citing Chamberlain v. State, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999)). We
review the decision under a highly deferential standard because the trial court is in
the best position to determine whether the State's facially race-neutral explanation for
a peremptory strike is genuinely race-neutral. Gibson v. State, 144 S.W.3d 530, 534
(Tex. Crim. App. 2004) (citing Jasper v. State, 61 S.W.3d 413, 421-22 (Tex. Crim.
App. 2001)).

 Analysis

 The Equal Protection Clause of the Fourteenth Amendment prohibits the State
from using peremptory strikes for the purpose of excluding venire members on the
basis of race. U.S. Const. amend. XIV; Batson, 476 U.S. at 89, 106 S. Ct. at 1719. 
The defendant bears the burden to make a prima facie showing that the State used its
peremptory strikes to exclude venire members on the basis of race. Herron v. State,
86 S.W.3d 621, 630 (Tex. Crim. App. 2002). After the defendant makes the requisite
prima facie showing, the State has the burden to produce a race-neutral explanation
for its use of peremptory strikes. Id. After the State produces a race-neutral
explanation, the defendant may rebut the explanation as mere pretext. Id. The trial
court must then decide whether the defendant has proved purposeful discrimination. 

 Here, appellant argues that the State struck venire member Winfield because
he is African-American. The State argues that it struck Winfield because of his
answers to questions regarding whether the education level of a witness would affect
his evaluation of the witness's credibility. 

 During the voir dire examination, the following exchange took place between
the State and venire member Winfield:

 [State]: Mr. Winfield, let me come back to you as Juror No. 1. Do
you think perhaps a person's education level might affect
their ability to understand questions, for instance? You
think that's something that [sic] might or might not make
a difference?

 

 [Winfield]: It could.

 

 [State]: Could? Okay.

 

 [Winfield]: Depends on how you phrase it to them.

 

 [State]: Exactly. Sometimes when I'm in trial and I get really tired,
questions make a lot of sense up here. But when they come
out of my mouth, they don't make much sense. Or maybe
I learned a new word from my 14-year old last night and I
used that word and it's a word just out of the blue. What
[sic] you look at those kinds of questions as far as
analyzing a person's credibility about their [sic] ability to
understand the questions? Is that something you would
take into account?

 

 [Winfield]: No.

 

 After the voir dire examination was completed, appellant made his Batson
challenge to the State's decision to strike Winfield. The State gave the following
explanation for its decision to strike Winfield before the trial court:

 [The State]: The victim's wife in this case, the victim, grew up in
Cambodia. She has very little education. And I'm
concerned about Mr. Winfield's answers relative to the
education level being something that he wouldn't be
concerned with as far as judging a person's credibility. 
I've had problems with their understanding stuff even
through a translator. That's why Mr. Winfield was struck. 
There was somebody else that didn't have those kinds of
problems and I didn't strike that individual.


 The trial court accepted the State's race-neutral explanation and denied
appellant's Batson challenge. Here, the State merely recited the particular
circumstances and limitations regarding the complainant's wife. The trial court may
have reasonably accepted the State's expressed concern about venire member
Winfield's potential bias against an indispensable witness for the State. We conclude
that the trial court's decision to deny appellant's Batson challenge was not clearly
erroneous. 

 Appellant also made a Batson challenge to the State's decision to strike venire
member Ellis, arguing that she was struck because she is African-American. The
State argues that it struck Ellis because she is a Children's Protective Services
("CPS") worker and expressed the view that rehabilitation is more important than
punishment when fashioning a response to perpetrators of violent crime. 

 During the voir dire examination, the following exchange took place between
the State and venire member Ellis:

 [State]: As far as punishment, we're back in your kingdom. You're
the one that is making the law. And the question for you,
in a violent crime, a capital murder kind of crime, you're
the one making the law and you get to tell a jury, well, in
my kingdom, the crime of capital murder, punishment is
more important or rehabilitation is more important. So,
you're going to decide in a violent crime like capital
murder, murder, aggravated robbery, something like that,
punishment is more important or rehabilitation is more
important. Okay. So that question to you is going to be
punishment or rehabilitation. I'm going to ask everybody. 
Okay.

 

 [Ellis]: Rehab.

 


After the voir dire examination was completed, appellant made his Batson challenge
to the State's decision to strike Ellis. The State gave the following explanation for
its decision to strike Ellis before the trial court:

 [ State]: She's a CPS person. So, that's why she was struck. Also
she is a rehabilitation person and I only--that was
rehabilitation--that was struck by the State. There are a
couple, four or five, that are kind of wavering about your
instructions. If I could correct the record, Juror No. 33
appeared to be a black female. I did not strike her.


 . . . .


 [Appellant] I'm having a hard time accepting that the State is not going
to put people on the jury because they work for Child
Protective Services.

 

 [State]: I've got protective--they are wonderful but they are soft on
people that are on trial for crimes. I've just dealt with too
many of them. Same with juvenile probation officers. I
think they're great on their job, but I wouldn't want them
on a jury. 


 . . . .

 The trial court accepted the State's race-neutral explanation and denied
appellant's Batson challenge. Here, the trial court may have reasonably accepted the
State's expressed concern that, because appellant was a juvenile at the time of the
offense, venire member Ellis might have shown a predisposition against convicting
appellant due to her occupation and her stated views. Therefore, we conclude that the
trial court's decision to deny appellant's Batson challenge was not clearly erroneous. 

 We overrule appellant's first point of error.Hearsay and the Confrontation Clause

 In his second point of error, appellant argues that the trial court erred in
allowing the jury to consider inadmissible hearsay testimony from Detective Widner
in violation of appellant's Sixth Amendment confrontation rights. 

 

 Standard of Review

 We review the trial court's decision to admit or exclude evidence under an
abuse of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App.
2002) (citing Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)). This
Court will not reverse the trial court's ruling unless that ruling falls outside the "zone
of reasonable disagreement." Id. We do not conduct a de novo review of the trial's
court decision. Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). Our
role is confined to merely determining whether the record supports the trial court's
ruling. Id. 

 Analysis

 The Sixth Amendment guarantees a criminal defendant the right to confront
"the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment
protection extends to out-of-court statements used as evidence against the accused.
Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364 (2004). Out-of-court statements deemed as "testimonial" in effect and nature are impermissible as
evidence against the accused. (3) Id. Out-of-court statements taken by police officers
in the course of interrogations are generally deemed "testimonial" under Sixth
Amendment Confrontation Clause standards. (4) Id.; see also Davis v. Washington,
547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74 (2006) (defining statements as
testimonial when "the circumstances objectively indicate that there is no such
ongoing emergency and that the primary purpose of the interrogation is to establish
or prove past events potentially relevant to later criminal prosecutions"). 

 Here, appellant argues that Detective Widner's testimony during both the
pretrial identification hearing and the subsequent trial on the merits was based on
suspect out-of-court Cambodian language interpretation performed by the
complainant's daughter and was therefore inadmissible hearsay. 

 Hearsay

 Detective Widner interviewed Meach on three occasions to get an
identification of the complainant's assailant. He interviewed her at the crime scene
on August 13, 2005, at the Houston Police Department on August 16, 2005, and at
Meach's home on August 17, 2005. At each interview, Widner showed Meach photo
arrays of potential suspects. At each interview, Meach required a translator
acquainted with the Cambodian language. Meach's relatives translated at the first
interview and a Cambodian translator employed by the Houston Police Department
translated at the second interview.

 Prior to the third interview, on August 17, 2005, Widner called Meach's
residence to confirm the meeting with the complainant and Nimol In. Nimol In acted
as interpreter for Meach during the interview, which was held in Meach's residence. 
Widner testified that, during the interview, he asked Nimol In the questions in
English. Nimol In then translated the questions into Cambodian. Meach responded
in Cambodian, and Nimol In translated the responses into English. Widner admitted
that he did not speak Cambodian and did not know whether Nimol In translated the
questions to Meach in the manner Widner asked them. During this interview,
Widner showed Meach and Nimol In a photo array of six potential suspects and
Nimol In told Widner that Meach had identified appellant as the assailant. Based on
Nimol In's translation of Meach's responses and Meach's tapping appellant's photo,
Widner circled the photo of appellant. Meach then initialed appellant's photo to
certify the identification. Appellant argues that Meach's out-of-court identification of appellant was
hearsay. The Texas Rules of Evidence generally prohibit out-of-court statements
offered to prove the truth of the matter asserted, or "hearsay." See Tex. R. Evid.
801, 802. However, a statement is not deemed hearsay if the statement involves
identification of a person perceived by the declarant and the declarant later testifies
at a trial or hearing and becomes available for cross-examination concerning the
statement. See Tex. R. Evid. 801(e)(1)(C). Here, Meach testified at trial. Thus,
Meach's out-of-court identification of appellant was not hearsay in itself. See Tex.
R. Evid. 801(e)(1)(C) (deeming out-of-court identification of person perceived by
declarant who later testifies at trial not to be hearsay).

 Translated Statements

 Appellant contends, however, that because of Widner's uncertainty regarding
Nimol In's translations and Nimol In's filial proximity to the complainant, Widner's
testimony was based on Nimol In's statements regarding the identification, rather
than Meach's, and Widner's testimony is, for that reason, hearsay. Translated
statements are admissible as long as the statements qualify under a hearsay rule
exception and the interpreter has no motive to mislead, distort, or make an inaccurate
translation. Cassidy v. State, 149 S.W.3d 712, 715 (Tex. Crim. App. 2004). 

 This Court has outlined a four-factor test to determine whether an interpreter
for a party associated with litigation or prosecution is either a mere "language
conduit" for the party or, as appellant alleges, a declarant of an out-of-court
statement within the meaning of the hearsay rule in the Texas Rules of Evidence.
Gomez v. State, 49 S.W.3d 456, 459 (Tex. App.--Houston [1st Dist.] 2001, pet.
ref'd) (citing United States v. Nazemian, 948 F.2d 522, 527 (9th Cir. 1991)). First,
we determine which party supplied the interpreter. Id. Second, we determine
whether the interpreter had any motive to mislead or distort. Id. Third, we assess
the interpreter's qualifications and language skills. Id. Finally, we determine
whether actions taken subsequent to the conversation were consistent with the
statements as translated. Id. 

 First, the interpreter, Nimol In, was not supplied by any party. Rather she was
available to translate because she was at Meach's residence at the time of the third
interview, just as Meach's relatives had translated at the crime scene. Although, the
second interview on August 16, 2005 was taken at the Houston Police Department
with a Cambodian translator employed by the Houston Police Department. The
police thus had access to competent Cambodian translators who could serve a
"language conduit" function. However, no evidence in the record suggests that the
police believed a police department translator was necessary for an interview at
Meach's residence. 

 Second, we have not found any record evidence to show that Nimol In had a
motive to mislead or distort either Widner's questions or her mother's replies in the
third police interview. Rather, Widner's circling appellant's photograph and
Meach's tapping on the photograph and initialing of the photograph in response to
the translated questions are evidence that Nimol In accurately translated Widner's
questions to her mother asking her whether she could identify the person who
stabbed the complainant at the donut shop.

 Third, there is no evidence that Nimol In's qualifications and language skills
in communicating in both English and Cambodian were insufficient for her to
translate accurately for Meach. Nimol In grew up in this country and presumably
fluent in both English and the Cambodian dialect she learned from Meach herself. 
She demonstrated her language abilities during the first interview between Meach
and Widner on August 13, 2005, as well as in the third interview. 

 Fourth, in response to the statements translated by Nimol In,, Meach identified
appellant by tapping his photo in the array Widner had brought to the third interview,
indicating that she understood Widner's identification request. Appellant was later
detained and tried. Meach testified at the trial, where she was subject to cross-examination. She repeated her identification of appellant, again through an
interpreter.

 Balancing all the Gomez factors, we hold that Nimol In served as a mere
language conduit for Meach. We hold that the trial court did not abuse its discretion
when it admitted Widner's testimony for use at the pretrial identification hearing and
at the trial on the merits. (5) 

 Harmless Error 


Even if the trial court had erred in admitting Widner's testimony, however, the error

would have been harmless. See Tex. R. App. P. 44.2(a). (6) 

 When a witness's ability to make an in-court identification has an origin
independent of an alleged improper pre-trial identification procedure, such testimony
is admissible at trial. Waller v. State, 648 S.W.2d 308, 312 (Tex. Crim. App. 1983). 

Here, the State produced significant identification evidence independent of Widner's
testimony. The complainant's wife, Meach, identified appellant at the pretrial
identification hearing and at the trial on the merits through a court-appointed
interpreter. The State presented Darrell Wiltz who testified that he saw appellant
coming through a hole in a fence adjacent to the crime scene on the night the
complainant was killed. Appellant was panting and sweating heavily when Wiltz
walked toward appellant to talk with him. Appellant told Wiltz that appellant needed
to discard the blue shirt that he was wearing. Wiltz testified that when he asked
appellant why he needed to discard the shirt, appellant responded by asking Wiltz
if he "knew the donut man," an apparent reference to the complainant. When Wiltz
told appellant that he did know the "donut man," appellant told Wiltz that appellant
had "done him in." The State also produced Jeffrey Lyons, a classmate of
appellant's at Channelview High School in Channelview, Texas. Lyons testified that
he asked appellant about the stabbing at the complainant's donut shop and that
appellant told Lyons he had stabbed complainant sixteen times. 

 Given the volume of identification evidence with origins independent from the
pre-trial identification procedure, Widner's testimony regarding Meach's out-of-court identification of appellant from the photo array was merely cumulative and had
no substantial effect on the identification of appellant as the complainant's assailant. 
Waller, 648 S.W.2d at312. It was not harmful error. See Tex. R. App. P. 44.2(a). 

 We overrule appellant's second point of error.

Texas Evidence Rule 403

 In his third point of error, appellant argues that the trial court erred in
admitting prejudicial photographic evidence in violation of Rule 403 of the Texas
Rules of Evidence.

 Standard of Review

 We review a trial court's decision to admit evidence under Rule 403 under a
clear abuse of discretion standard. Rachal v. State, 917 S.W.2d 799, 808 (Tex. Crim.
App. 1996) (citing Montgomery v. State, 810 S.W.2d 372, 392 (Tex. Crim. App.
1990)). A trial judge has broad discretion in admitting or excluding evidence. 
Mozon v. State, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). Under Rule 403, trial
courts should favor admission in close cases. Montgomery, 810 S.W.2d at 389. 

 

 Analysis

 Texas Evidence Rule 403 allows a trial court to exclude relevant evidence "if
its probative value is substantially outweighed by the danger of unfair prejudice." 
See Tex. R. Evid. 403. In determining whether the danger of unfair prejudice
substantially outweighs the probative value of photographs, several factors may be
considered, such as the number of photographs, the detail and size of the
photographs, whether the photographs are in black and white or in color, whether the
photographs are close-ups, the availability of other means of proof, and the unique
circumstances of each case. Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App.
1995). A presumption that the evidence has probative value affects the balancing
analysis. Goldberg v. State, 95 S.W.3d 345, 366 (Tex. App.--Houston [1st Dist.]
2002, pet. ref'd). Any decision regarding the admissibility of photographs is made
within the sound discretion of the trial judge. Sonnier, 913 S.W.2d at 518 (citing
Jones v. State, 843 S.W.2d 487, 500 (Tex. Crim. App. 1992)); Williams v. State, 958
S.W.2d 186, 195 (Tex. Crim. App. 1997.

 The trial court may admit photographs that depict what was included in the
testimony of various witnesses as long as the photographs have not been manipulated
and are not used to inflame or mislead the jury. See Sonnier, 913 S.W.2d at 519
(holding that four photographs showing victims' bodies lying in bloodied water were
included in witnesses' testimonial depictions and, therefore, could be admitted).
Crime scene photographs are just as relevant as verbal testimony by aiding the jury
in determining the manner and means of the death of the victim, the force used, the
length of time the victim had been dead, and sometimes even the identity of the
perpetrator. Williams, 958 S.W.2d at 195. Crime scene photos are helpful to the jury
by providing a visual context for witnesses' testimony in describing the crime scene
and may be admitted. See Frank v. State, 183 S.W.3d 63, 78 (Tex. App.--Fort
Worth 2005, pet. ref'd). When photographs depict nothing more than the reality of
the crime the defendant has committed, the reality of the offense serves as
"powerful" visual evidence which is more probative than prejudicial. Chamberlain,
998 S.W.2d 230, 236-37 (holding that closeup of victim's face with exposed brain
matter was more probative than prejudicial). A trial court does not abuse its
discretion merely because it admits into evidence photographs that are gruesome. 
See Sonnier, 913 S.W.2d at 519. 

 Appellant argues that the trial court erred in admitting nine photographs that
are merely cumulative and gratuitous images of gore that are substantially more
prejudicial than probative. Each photo admitted by the trial court depicts the wounds
inflicted on the complainant's body alongside forensic equipment used to measure
and locate those wounds. The photos show various body parts of the complainant's
body, each part highlighted to show the depth and length of the particular wound. 
The photos are graphic, intense and fully depict the gravity of the offense suffered
by the complainant. But, the photos are clinical rather than gratuitous. Because each
photo measures a different body part, there is no cumulative effect when viewing the
photos as a complete series. The photos merely depict the result of appellant's
actions. We conclude that the trial court's decision to admit these photos was within
its sound discretion. 

 We overrule appellant's third point of error.

Conclusion

 We affirm the trial court's judgment. 




 

 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. § 19.03(a)(8) (Vernon 2007).
2. See id. § 12.31(a) (Vernon Supp. 2006); Tex. Code Crim. Proc. Ann. art. 37.071, §
1 (Vernon 2006). 
3. The definition of "testimonial" out-of-court statements in Crawford is notably
imprecise by the Supreme Court's own admission. Crawford v. Washington, 541 U.S.
36, 51, 124 S. Ct. 1354, 1364 (2004). Generally a "testimonial" out-of-court
statement is defined as an ex parte statement made under circumstances that would
lead the declarant or any objective witness to reasonably anticipate that the statement
would be used in the prosecution of the accused. Id.
4. The Court uses the term "interrogation" in a "colloquial rather than any technical legal
sense." Crawford, 541 U.S. at 53, n.4, 124 S. Ct. at 1365 n.4. 
5. Appellant also argues that the trial court erred in allowing the use of uncertified
Cambodian translators when a certified translator was available. Appellant argues that
such uncertified translators create a hearsay circumstance in violation of the Sixth
Amendment. Here, appellant's complaint is not preserved because appellant did not
object to the use of the court-appointed Cambodian translators. See Tex. R. App. P.
33.1.
6. Rule 44.2(a) states, "If the appellate record in a criminal case reveals constitutional
error that is subject to harmless error review, the court of appeals must reverse a
judgment of conviction or punishment unless the court determines beyond a
reasonable doubt that the error did not contribute to the conviction or punishment."