Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



CHRISTOPHER FLORES,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00002-CR

Appeal from the

41st District Court

of El Paso County, Texas

(TC# 990D00966)




O P I N I O N

           This is an appeal from a jury conviction for the offense of murder. The jury
assessed punishment at life imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           On November 25, 1998 at 5 to 5:30 p.m, Alfonso Garcia was leaving his home
when he heard two gunshots. He did not hear a car drive away. Clinton Reno who lived
in the same area, saw a white Honda Civic in the street as he was driving home from
work at 2 in the morning. He saw bullet holes in the window. He called the Sheriff’s
Department upon arriving home. Sheriff’s deputies were dispatched to Desert Willow
Street in El Paso, Texas with regard to a suspicious vehicle. Upon arrival, the officers
discovered the white Honda Civic with two bullet holes on the driver’s side window. The
decedent, Juan Martinez, was found slumped over in the vehicle. He had apparently been
shot; there was blood throughout the vehicle. Two shell casings for a 9mm firearm were
found near the rear of the vehicle. During the ensuing investigation, it was learned that
the mother of the decedent’s daughter, Kelly Jo Castro Flores, frequently stayed at 14132
Desert Willow Street. The house and her car were searched, but no evidence was found.
           The testimony at trial revealed that Martinez was in the process of obtaining
custody of Genani Martinez, his daughter with Kelly Jo Castro Flores. She was married
to Appellant when Martinez was killed. The custody dispute had caused difficulties
between the parties, and Martinez had his brother accompany him when he went to pick
up or leave off the child during his visitation periods. Kelly Jo Castro Flores and
Appellant had moved to Fort Worth, Texas and this caused her to be held in contempt
regarding the court’s visitation orders. She was sentenced to serve forty days in jail, but
she was placed on probation contingent upon her observation of the visitation orders. 
After the hearing, as Martinez walked with his attorney in front of the El Paso County
Courthouse, Appellant slammed into Martinez’s side. Appellant then stated, “You can be
handled.”
           On November 23, 1998, Martinez picked up the child for the weekend visitation. 
When he returned the girl, he had El Paso County Sheriff’s Deputy Victor Donoso
accompany him. Martinez and Appellant began to argue and the deputy told Appellant to
go back in the house and he told Martinez to go back to his car. On the evening of
November 25, 1998, Martinez was supposed to pick up the child, but his brother was
unable to accompany him.
           The home at 14132 Desert Willow was owned by Ellis Richardson. Kelly Jo
Castro Flores, Barbara Debenadero Corona, Juan Corona, Florence Debenadero, and Jose
Arredondo lived or stayed at the home on a regular basis. The week of Martinez’s killing
was the first time Appellant stayed at the house. Jose Arredondo did work around the
house. He met Kelly Jo Castro Flores previously and he met Appellant on a later
occasion. He did not know either one and he did not consider them to be friends.
           Kelly Jo Castro Flores, Appellant, Genani, Arredondo, Richardson, and the
Coronas were at the home during the afternoon and evening of November 25, 1998. They
gathered around the bar area of the home. It was decided to get some pizza. Arredondo
ordered the pizza, but he needed a ride as he did not have a driver’s license. He went to
get Kelly Jo Castro Flores and Appellant and he found them in their room with the lights
off. They both jumped when Arredondo knocked on the door. He saw that Appellant
was holding a small white towel that was covering something. They told Arredondo to
leave the room and they would join him shortly. Before going to get the pizza, Appellant
was asked if Genani’s father was coming to get her and Appellant replied that they should
not worry because no one was coming to get the child on that day. Appellant took
Arredondo to get the pizza. They left between 6 or 7 p.m.
           As they left the house, Arredondo noticed a white car by the road in front of the
house. He wanted to go back and tell Richardson about the car but Appellant told him not
to worry about the car because it belonged to Martinez and he was there to pick up the
girl. Later during the drive, Appellant commented to Arredondo that he would like to
break Martinez’s bones. Arredondo told him that it was a bad idea and Appellant
responded that it was “too late cause I just left him back there with three bullet holes on
his window.” Appellant told Arredondo that he had met Martinez earlier when he came
to pick up Genani. He chased Martinez back into his car. Appellant felt Martinez was
going to get away so he pulled out his gun and shot Martinez.
           After they picked up the pizza, Appellant related to Arredondo that he had been
having problems with Martinez regarding custody of the child and the travel back and
forth between El Paso and Fort Worth was disrupting his work. Arredondo believed what 
Appellant had told him and he was afraid. He did not want to continue in the car with
Appellant and he asked Appellant to let him off at his cousin’s house. Before Arredondo
got out of the car, Appellant stated to him to, “say in [his] mind that [he] never saw that
white car.” Appellant then asked if Arredondo would do him a favor and switch shoes. 
Arredondo testified that he reluctantly did so and he then walked to his cousin’s house. 
Later, Arredondo lost the shoes and he bought another pair.
           Diego Mendez, Arredondo’s cousin testified that when Arredondo came to his
house, he was wearing someone else’s shoes. They were too small for Arredondo. He
stated that Arredondo was scared and told him what Appellant had stated about the
killing. Mendez encouraged Arredondo to tell the police but he resisted. Mendez did not
go to the police because he was not sure a crime had been committed and he knew
Arredondo had some legal problems and existing warrants.
           Arredondo testified that he did not go to the police and he did not give a statement
until February 9, 1999 when the police caught up with him. Arredondo stated that he kept
the information to himself because he feared for his life.
II. DISCUSSION
           In Issue No. One, Appellant contends that the court erred by prohibiting him from
establishing that Jose Arredondo was on six years’ deferred adjudication for possession of
marijuana. At trial, a hearing was conducted outside the presence of the jury to determine
the admissibility of Jose Arredondo’s probation status. The witness admitted that he was
on deferred adjudication community supervision for felony possession of marijuana. The
trial court sustained the State’s objection and ruled that the probation status was not
admissible. When the jury returned, the trial court instructed the jury to disregard
Appellant’s initial question concerning the probation.
           Evidence that a State’s witness is on deferred adjudication probation is admissible
to show a potential bias or interest in helping the State by testifying. Maxwell v. State, 48
S.W.3d 196, 199-200 (Tex. Crim. App. 2001). The State concedes that Arredondo’s
probation status was admissible at trial.
           The Confrontation Clause of the Sixth Amendment of the United States
Constitution guarantees an accused’s right “‘to be confronted with the witnesses against
him.’” The Confrontation Clause primarily secures the right of cross- examination.
Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (citing Douglas v.
Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)). The Sixth
Amendment’s right of confrontation is a fundamental right and is applicable to the states
by virtue of the Fourteenth Amendment. Shelby, 819 S.W.2d at 546 (citing Pointer v.
Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)).
           Like other federal constitutional errors, a violation of the Confrontation Clause is
subject to a harmless error analysis. Shelby, 819 S.W.2d at 546 (citing Delaware v. Van
Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)). Because a
violation of the right to cross-examination under the Confrontation Clause necessarily
means the testimony was not permitted before the fact finder, the Supreme Court
established a three-prong analysis for reviewing courts. Shelby, 819 S.W.2d at 547. First,
a reviewing court must assume that the damaging potential of the cross-examination was
fully realized. Id. (citing Van Arsdall, 106 S.Ct. at 1438). Second, with that assumption
in mind, the reviewing court must analyze the error in connection with the following
factors:
           (1) the importance of the witness’s testimony in the prosecution’s case;

           (2) whether the testimony was cumulative;
 
(3) the presence or absence of evidence corroborating or contradicting the
witness’s testimony on material points;

           (4) the extent of cross-examination otherwise permitted; and

           (5) the overall strength of the prosecution’s case.

Id. (citing Van Arsdall, 106 S.Ct. at 1438).

           Finally, in light of the first two prongs, the reviewing court must determine if the
error was harmless beyond a reasonable doubt. Id. (citing Chapman v. California, 386
U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); Van Arsdall, 106 S.Ct. at 1438);
Tex. R. App. P. 44.2(a).
           In the present case, Arredondo testified that he was not offered anything in return
for his testimony. It is clear that his testimony was critical to the State’s case. Appellant
was otherwise able to cross-examine Arredondo and we note that during the cross-examination of Arredondo’s cousin, it was brought out that Arredondo had legal
problems and there were existing warrants. The State’s case was not contradicted by
evidence at trial and there was corroborating evidence with regard to prior difficulties
between Appellant and Martinez. We find that the error committed by the court did not
contribute to Appellant’s conviction or punishment beyond a reasonable doubt. Issue No.
One is overruled.
           In Issue No. Two, Appellant asserts that the court erred in admitting an autopsy
photograph because the probative value of the photograph was substantially outweighed
by its prejudicial effect. Appellant complains of an autopsy photograph of the decedent
admitted at trial. The photograph shows the head of the decedent. His eyes are partially
open and there appears to be some blood on his face. Appellant objected to the
photograph because its probative value was outweighed by its prejudicial effect.
           Tex. R. Evid. 403 requires an admissible photograph to possess “some probative
value and that its probative value not be substantially outweighed by its inflammatory
nature.” Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), cert. denied, 505
U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). Relevant factors in making this
determination include: the number of exhibits offered, their gruesomeness, their detail,
their size, whether they are black and white or color, whether they are close-up shots,
whether the body is naked or clothed, the availability of other means of proof, and other
circumstances unique to the individual case. Santellan v. State, 939 S.W.2d 155, 172
(Tex. Crim. App. 1997). The admissibility of photographs over a challenge is within the
sound discretion of the trial judge. Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim.
App. 1995). Autopsy photographs are generally admissible unless they depict mutilation
of the victim caused by the autopsy itself. Burdine v. State, 719 S.W.2d 309, 316 (Tex.
Crim. App. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).
           In the present case, the photograph was used to identify the body and there were no
other such photographs before the jury. The photograph was not particularly gruesome
and it did not depict mutilation caused by the autopsy. We find that the court did not err
in admitting the photograph. Issue No. Two is overruled.
           In Issue No. Three, Appellant argues that the court erred by admitting a judgment
of a prior conviction because the State failed to prove that the person named in the
judgment and Appellant were the same person. At trial, Detention Officer Elliott testified
that from jail records that Appellant’s date of birth was September 30, 1971 and his social
security number was XXX-XX-XXXX. His emergency contact was Elida Martinez of 129
East Gambrel, Fort Worth, Texas, and there was a detainer on Appellant from the Federal
Correctional Institute in Three Rivers, Texas. The jail records also contained a photo of
Appellant and a thumbprint. Detective Onesimo Esparza testified that he met with
Appellant while he was in federal custody at Monahans County Detention Facility for
possession with intention to distribute 2,000 pounds of marijuana. He was arrested for
that federal offense under the name of Mark Anthony Rodriguez.
           Elida Martinez, Appellant’s mother, testified that his date of birth was September
30, 1971, and he was in federal custody for a marijuana charge. She lived at 929 East
Gambrel in Fort Worth, Texas. She identified the photograph in the jail paperwork as
Appellant.
           Absent an abuse of discretion, the court’s decision to admit evidence should not be
overturned on appeal. Levario v. State, 964 S.W.2d 290, 296 (Tex. App.--El Paso 1997,
no pet.). A prior conviction may be established by certified copies of a judgment and a
sentence and authenticated copies of the Texas Department of Corrections records
including fingerprints, supported by expert testimony identifying them as identical with
known prints of the defendant. Vessels v. State, 432 S.W.2d 108, 117 (Tex. Crim. App.
1968). While this may be the most popular method of proving prior convictions, it is only
one method or way of proving prior convictions. Rascon v. State, 496 S.W.2d 99, 102
(Tex. Crim. App. 1973); Brumfield v. State, 445 S.W.2d 732, 740 (Tex. Crim. App.
1969). Other methods include (1) testimony of a witness who personally knows the
defendant and the fact of his prior conviction and identifies him. Ward v. State, 505
S.W.2d 832, 837 (Tex. Crim. App. 1974); (2) stipulations or judicial admission of a
defendant. Garza v. State, 548 S.W.2d 55, 56-57 (Tex. Crim. App. 1977). See also the
method utilized in Gollin v. State, 554 S.W.2d 683, 686 (Tex. Crim. App. 1977). 
Certainly these methods cannot be said to be exclusive of proving prior convictions, and
further proof often includes the use of a combination of methods. Id.
           In the instant case, we find the combination of the testimony of Detective Esparza
and Appellant’s mother provides a sufficient connection to the jail records to substantiate
that Appellant was the same individual who committed the federal offense. Issue No.
Three is overruled.
           In Issue No. Four, Appellant maintains that the court erred when it failed to give
an instruction on accomplice witness testimony in the court’s charge to the jury. At the
close of evidence, Appellant requested that the court include an instruction that
Arredondo was an accomplice witness. The court denied Appellant’s request. Appellant
asserts that he was entitled to the accomplice witness instruction because Arredondo
traded shoes with him and the witness failed to report the murder to the police.
           An accomplice participates with a defendant before, during, or after the
commission of a crime and acts with the required culpable mental state. Kutzner v. State,
994 S.W.2d 180, 187 (Tex. Crim. App. 1999) (citing McFarland v. State, 928 S.W.2d
482, 514 (Tex. Crim. App. 1996), cert. denied, 519 U.S. 1119, 117 S.Ct. 966, 136
L.Ed.2d 851 (1997)). The participation must involve an affirmative act that promoted the
commission of the offense with which the accused is charged. Id. An accomplice as a
matter of law is one who is susceptible to prosecution for the offense with which the
accused is charged or a lesser-included offense. Id.; Blake v. State, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998). The trial court is under no duty to instruct the jury unless
there exists no doubt or the evidence clearly shows that a witness is an accomplice
witness as a matter of law. Blake, 971 S.W.2d at 455. If the evidence presented by the
parties is conflicting and it is not clear whether the witness is an accomplice, then the trial
court must leave to the jury the question of whether the inculpatory witness is an
accomplice witness as a matter of fact under instructions defining the term “accomplice.” 
Id. A witness is not an accomplice simply because he knew of the crime but failed to
disclose it or even concealed it. Villarreal v. State, 576 S.W.2d 51, 56 (Tex. Crim. App.
1978).
           In this case, there is no indication that Arredondo was an accomplice either as a
matter of law or fact. He could not have been charged with the offense and the fact that
he traded shoes and did not immediately come forward does not make him an accomplice
under the above-cited authority. Issue No. Four is overruled.
           In Issue No. Five, Appellant asserts that the evidence is legally and factually
insufficient to support the conviction. In reviewing the legal sufficiency of the evidence,
we are constrained to view the evidence in the light most favorable to the judgment to
determine whether any rational trier of fact could find the essential elements of the
offense, as alleged in the application paragraph of the charge to the jury, beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989); Humason v. State,
728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More particularly, sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 239-40
(Tex. Crim. App. 1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a
reasonable doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied,
498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700,
702 (Tex. App.--El Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh
any evidence or evaluate the credibility of any witnesses, and thus, the fact-finding results
of a criminal jury trial are given great deference. Menchaca v. State, 901 S.W.2d 640,
650-52 (Tex. App.--El Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421
(Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991);
Leyva v. State, 840 S.W.2d 757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v.
State, 831 S.W.2d 20, 22 (Tex. App.--El Paso 1992, no pet.). Instead, our only duty is to
determine if both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the verdict. 
Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the
evidence in favor of the verdict. Matson, 819 S.W.2d at 843 (quoting Moreno v. State,
755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of fact, not the appellate court,
is free to accept or reject all or any portion of any witness’s testimony. Belton v. State,
900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           Appellant maintains that the evidence is legally insufficient because there is no
physical evidence linking Appellant to the murder. However, we find that there is
abundant other evidence that serves to substantiate Appellant’s guilt. There were prior
difficulties between Appellant and Martinez. By time and place, Appellant was situated
to have committed the offense. Arredondo testified to Appellant’s confession. We find
the evidence is legally sufficient to support the conviction.
           Appellant argues that the evidence is factually insufficient to corroborate his
admissions to Arredondo. When conducting a review of the factual sufficiency of the
evidence, we consider all of the evidence, but we do not view it in the light most
favorable to the verdict. Clewis v. State, 922 S.W.2d 126,129 (Tex. Crim. App. 1996);
Levario, 964 S.W.2d at 295. We review the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it with the evidence that
tends to disprove that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000);
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832,
118 S.Ct. 100, 139 L.Ed.2d 54 (1997). A defendant challenging the factual sufficiency of
the evidence may allege that the evidence is so weak as to be clearly wrong and
manifestly unjust, or in a case where the defendant has offered contrary evidence, he may
argue that the finding of guilt is against the great weight and preponderance of the
evidence. See Johnson, 23 S.W.3d at 11. Although we are authorized to set aside the fact
finder’s determination under either of these two circumstances, our review must employ
appropriate deference and should not intrude upon the fact finder’s role as the sole judge
of the weight and credibility given to any evidence presented at trial. See Johnson, 23
S.W.3d at 7. We are not free to reweigh the evidence and set aside a verdict merely
because we feel that a different result is more reasonable. Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 135.
           Given our previous discussion, the record established that it was not necessary to
corroborate Arredondo’s testimony. However, there was corroborating evidence in the
location of the car and the gunshots through the window and we find that the evidence is
clearly factually sufficient. Issue No. Five is overruled.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of
the trial court.
                                                                  RICHARD BARAJAS, Chief Justice
January 20, 2005

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
Larsen, J., not participating

(Do Not Publish)