NO. 07-06-0164-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 4, 2007

_____

JEROD W. JONES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409401; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Jerod W. Jones, was convicted by a jury of aggravated assault, enhanced. He was sentenced to fifty years confinement by the trial court. In challenging his conviction, he presents three issues by which he maintains (1) the evidence is legally and (2) factually insufficient to show that he intentionally, knowingly, or recklessly committed aggravated assault with a deadly weapon by hitting Tanji Garcia with his vehicle

and (3) the trial court erred in overruling his objection to photographs of Garcia's injuries based on Rule 403 of the Texas Rules of Evidence. We affirm.

On the evening of May 19, 2005, Appellant, Chad Holmes, and Aaron Holmes decided to go to the Branch Office Bar and Grill to play pool. Appellant drove them there in a black Ford truck he had borrowed from his girlfriend, Kelli Ortega.[1] When he arrived at the bar, Appellant parked in the lot nearest the front of the bar. After entering the bar, Chad ordered a beer and requested quarters to play pool, but was immediately turned away after Appellant and a male patron exchanged words outside the bar.

Juan Leroy Arriaga testified that he left the bar to go to his car for cigarettes when "three dudes" "started running their mouth[s] and wanting to fight me . . . ." Arriaga went back in the bar to find his brother, Junior. A group of people from the bar, the bar's owner, and the bartender disbanded the group before any fighting broke out and asked Appellant and his friends to leave. The confrontation occurred in the early morning hours of May 20th.

Appellant and his friends drove to Appellant's mother's house. They were there briefly before realizing that Aaron had left his sandals in the parking lot after removing them in anticipation of a physical encounter. Aaron testified that except for his work shoes,

---

[1]At the time of trial, Kelli and Appellant were married; however, through voir dire testimony it was established that they were not married at the time of the incident and thus, no spousal privilege applied to any communications made at that time.

those sandals were the only other pair of shoes he owned and they decided to return to the bar to retrieve them. This time, to avoid a conflict, Appellant parked the truck in a shopping center parking lot located across the street from the bar.

According to Chad and Aaron, they didn't get to search for the sandals because a group (testimony indicates anywhere from six to fifteen persons) exited the bar and began chasing them. They returned to the truck to drive away as the crowd was yelling and hitting the truck. Appellant backed out of the parking space, drove over a curb, and ended up in the bar's parking lot where he struck Tanji Garcia as she was walking toward her boyfriend's car.

Appellant drove to Chad's apartment and parked the truck. Chad then drove Appellant and Aaron home in his vehicle to avoid being spotted by anyone from the bar who may have followed them. According to Chad and Aaron's testimony they did not realize they had struck a pedestrian until it was reported on the news.

Paramedics and law enforcement were called to the scene. According to a paramedic, Garcia sustained severe injuries to her face. Police officers interviewed witnesses and found an unopened beer can and a pair of flip flop sandals in the area. The black truck driven by Appellant was located and hair strands matching Garcia's hair were found in the right front bumper. Officers traced the truck to Kelli Ortega. She testified that she was working that night and had lent her truck to Appellant.

3

## Standard of Review–Sufficiency of the Evidence

By his first two issues, Appellant challenges both the legal and factual sufficiency of the evidence to support his conviction. When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2006); Tex. Penal Code Ann. § 2.01 (Vernon 2003).

Evidence is legally insufficient if, when viewed in a light most favorable to the prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *McKinney  v. State*, 207 S.W.3d 366, 374 (Tex.Crim.App. 2006). This standard is the same in both direct and circumstantial evidence cases. *Burden v. State*, 55 S.W.3d 608, 613 (Tex.Crim.App. 2001). In measuring the legal sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). This is done by considering all the evidence that was before the jury—whether proper or improper—so that we can make an assessment from the jury's perspective. *Miles v. State*, 918 S.W.2d 511, 512 (Tex.Crim.App. 1996). As an appellate court, we may

4

not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a "mere modicum" of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

After conducting a legal sufficiency review under *Jackson*, we may proceed with a factual sufficiency review. *Clewis*, 922 S.W.2d at 133. When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), *overruled in part by Watson v. State*, 204 S.W.3d 404, 415-17 (Tex.Crim.App. 2006). We cannot reverse a conviction unless we find some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417. In other words, we cannot conclude that Appellant's conviction is "clearly wrong" or "manifestly unjust" simply because we disagree with the jury's verdict. *Id.*; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

A person commits an assault if the person either intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). A person commits an aggravated assault if the person commits an assault as defined in § 22.01 and the person either causes serious bodily injury to another, or uses or exhibits a deadly weapon during the commission of the assault. § 22.02(a). Thus the State was required

5

to prove that Appellant intentionally, knowingly, or recklessly caused serious bodily injury to Garcia *or* used or exhibited a deadly weapon during the commission of the assault.[2]

The evidence established that Appellant was driving the black Ford truck that struck Garcia and caused severe facial injuries. Several police officers testified that the vehicle Appellant was driving was capable of causing death or serious bodily injury. *See* § 1.07(a)(17)(B) (defining deadly weapon). Accordingly, Appellant challenges the sufficiency of the evidence as it pertains to the element of intent and maintains that Garcia's injuries were the result of a "terrible accident."

The court's charge included all three culpable mental states. Because the State alleged all three theories of mental culpability, the evidence is sufficient to support Appellant's conviction if it establishes that he acted with any one of three mental states charged in the indictment. *Rogers v. State*, 774 S.W.2d 247, 251 (Tex.Crim.App. 1989), *cert. denied*, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), *overruled on other grounds*, *Peek v. State*, 106 S.W.3d 72, 79 (2003); *Paschal v. State,* 35 S.W.3d 80 (Tex.App.–Texarkana 2000, no pet.). Thus, we will review the evidence to determine if it is sufficient to establish that Appellant acted recklessly in causing Garcia's injuries.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a

---

[2]Although the statute is worded disjunctively, Appellant was indicted for causing serious bodily injury *and* using a deadly weapon. The court's charge tracks the indictment.

6

substantial and unjustifiable risk that the circumstances exist or the result will occur. §

6.03(c). The risk must be of such a nature and degree that its disregard constitutes a

gross deviation from the standard of care that an ordinary person would exercise under all

the circumstances as viewed from the actor's standpoint. *Id*. Whether a defendant

committed an offense with the requisite mental state is a question of fact to be determined

by the trier of fact from all the evidence presented. *Hemphill v. State*, 505 S.W.2d 560,

562 (Tex.Crim.App. 1974); *State v. Hart,* 905 S.W.2d 690, 693 (Tex.App.–Houston [14th

Dist.] 1995, pet. ref'd). A culpable mental state may be inferred from circumstantial

evidence such as acts, words, and the conduct of the accused. *See Guevara v. State*, 152

S.W.3d 45, 50 (Tex.Crim.App. 2004). *See also Moore v. State*, 969 S.W.2d 4, 10

(Tex.Crim.App. 1998).

According to Juan Leroy Arriaga's testimony, when the bar closed, he and his

friends went outside into the parking lot and noticed that Appellant and his two friends had

returned. He speculated they were there waiting for them to come out of the bar. Arriaga

claimed that Appellant and his friends were crossing the street toward him and his group

so they crossed the street to meet them halfway. They argued and were going to fight

when Appellant and his friends ran back to their truck. Arriaga denied that any weapons

or pool cues were brandished. Arriaga's recollection then places him, his brother, Junior,

and Tanji Garcia in the bar parking lot walking to Junior's car. He testified that Appellant

then drove his truck over the curb of the street adjoining the bar parking lot and that as he

and Junior jumped to the left, Garcia went right and was struck by Appellant.

7

Garcia testified that when she and her friends left the bar, Appellant and his friends approached her group and words were exchanged, but the confrontation did not escalate into a fight. According to her version, she let go of Junior's hand and began walking by herself to his car in the back of the bar parking lot. A crowd was still in the bar parking lot, but she was unaware of the details of what ensued between the crowd and Appellant and his friends.

Appellant's friends, Chad and Aaron, both testified that Arriaga's group was brandishing pool cues and knives and chasing them. Appellant, Chad, and Aaron ran back to the truck and backed out of an angled parking space as the crowd was yelling and hitting the truck. According to Chad, the natural direction to drive after backing out of the angled parking space was away from Arriaga's group. However, both Chad and Aaron testified that Appellant turned the truck around after backing out of the space so as to face the crowd he and his friends were fleeing from. Being unable to make a right turn onto the street because of the crowd, Appellant and his friends avoided the crowd by jumping a curb and driving through the bar parking lot. This resulted in Garcia being struck by the truck.

From the circumstantial evidence presented, the jury could have inferred that Appellant was aware of, but consciously disregarded, the substantial and unjustifiable risk of fleeing from a crowd in a truck, jumping over a curb, and driving through the bar parking lot. Appellant disregarded the easiest exit from the shopping center parking lot by backing out of the parking space and turning the truck around so as to face the crowd his friends

8

claimed they were trying to avoid. Appellant acted recklessly and created the risk of striking a pedestrian by driving toward a crowd instead of exiting the parking lot in the opposite direction, which would have been the natural direction to take.

Although the evidence is conflicting on whether weapons were brandished and who instigated the confrontation, the jury, as the trier of fact, determined that Appellant struck Garcia and that, at that time, he had the requisite mental state to be convicted of aggravated assault. We conclude that under *Jackson*, the evidence was legally sufficient to support Appellant's conviction. Issue one is overruled.

Appellant asserts that the evidence supports his conclusion that Garcia's injuries were the result of a "terrible accident" and that he did not have the requisite criminal intent to commit the offense of aggravated assault. From a review of the most important and relevant evidence discussed hereinabove,[3] we cannot conclude under *Watson*, that Appellant's conviction was "clearly wrong" or "manifestly unjust." Thus, the evidence is also factually sufficient to support Appellant's conviction. Issue two is overruled.

By his third and final issue, Appellant contends the trial court erred in overruling his objection to photographs of Garcia's injuries based on Rule 403 of the Texas Rules of Evidence. We disagree.

---

[3]*Sims v. State,* 99 S.W.3d 600, 600-601 (Tex.Crim.App. 2003); *Roberts v. State,* 221 S.W.3d 659, 665 (Tex.Crim.App. 2007).

## Standard of Review–Rule 403

A trial court's ruling in response to a Rule 403 objection is reviewed for abuse of discretion. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). The test for whether the trial court abused its discretion is whether the action was arbitrary or unreasonable. *Id.* We will not reverse the trial court's ruling if it is within the zone of reasonable disagreement. *Id*. at 440. In determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, a court should consider (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004).

In determining the prejudicial effect of photographs, courts may consider the number of photographs offered; their gruesomeness, detail, and size; whether they are in color; whether they are taken close-up; whether the person in the photograph is clothed; and any other factors unique to the situation. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex.Crim.App. 2006); *Long v. State*, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991).

Outside the jury's presence, the trial court heard Appellant's objections to State's Exhibits 19 through 28 depicting Garcia's severe facial injuries. The objections were based

10

on Rules 401, 402, and 403 of the Texas Rules of Evidence.[4]  Of the ten photographs, the trial court permitted the State to select one photograph from three separate groups showing three different angles of Garcia's face.  The State chose Exhibits 20, 23, and 26, and Appellant's objections to those photographs were overruled.

All three photographs are approximately three by five inches and show only Garcia's face.  Exhibit 20 is a right center view of her face; Exhibit 23 is a frontal view of her face; and Exhibit 26 shows the left side of her face.  Although the photographs in the appellate record appear in black and white, we will assume they were presented to the jury in color. *See Shuffield*, 189 S.W.3d at 787.  The photographs were taken by Dr. John Marchbanks just prior to performing surgery.  Dr. Marchbanks testified that he was called in to consult on Garcia's facial injuries, but did not offer any testimony describing the injuries.

Serious bodily injury is an element of aggravated assault the State was required to prove.  § 22.02(a) (1).  The photographs were offered into evidence for the purpose of establishing that element.  Appellant, however, argues that their admission was cumulative because a paramedic and a police officer who were dispatched to the scene gave graphic descriptions of Garcia's injuries during their testimony.  He further urges that Garcia's injuries were obvious when she testified.  Appellant contends that the probative value of the photographs was outweighed by their prejudicial effect.  However, as the State points out, the photographs actually served to soften the testimonials of Garcia's injuries.

---

[4]On appeal, Appellant limits his argument to Rule 403.

The paramedic testified that he had never seen trauma like that sustained by Garcia. He described her face as disfigured, "literally ripped apart." He continued that her features were unrecognizable. He did not know where her mouth was and her nose was "just shredded." He didn't know if her eye had been ripped out. One of the responding police officers testified that Garcia's face looked like it "exploded." The objected-to photographs, on the other hand, depict Garcia's face cleaned up in preparation for surgery. They show Garcia's injuries in a less gruesome manner than described by the testimony of the paramedic and police officer.

Photographs provide powerful visual evidence of an offense. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995). A trial court does not abuse its discretion in admitting into evidence gruesome photographs of a victim. *Id*. We conclude the photographs were relevant and were not overly gruesome, and the trial court did not abuse its discretion in admitting them. Issue three is overruled.

Consequently, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.