

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NOS. 02-10-00163-CR
## 02-10-00164-CR

---

ERICA LARAE KOLANOWSKI                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Erica Larae Kolanowski pleaded guilty to intoxication manslaughter and intoxication assault and pleaded not true to the deadly weapon allegations in both indictments. After a trial on punishment, the jury assessed her punishment at sixteen years' confinement and a $6,000 fine in Cause Number

---

[1]*See* Tex. R. App. P. 47.4.

1146625D (the intoxication manslaughter conviction) and at ten years' confinement and a $6,000 fine in Cause Number 1152610D (the intoxication assault conviction). In both causes, the jury also found that Kolanowski had used or exhibited a deadly weapon, to-wit: a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury. The trial court sentenced Kolanowski accordingly, ordering that the sentences run concurrently. Kolanowski appeals, arguing in one issue that the trial court abused its discretion by admitting a slow-motion videotape of the collision and photographs taken at the scene. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

After drinking alcoholic beverages for several hours, Kolanowski left a bar at around 11:00 p.m., and on her way home, she ran a red light at the intersection of South Cooper and Southwest Green Oaks in Arlington. Her Chevrolet Trailblazer "plowed" into a Dodge Avenger driven by Matthew Lundy. Lundy was driving his friend Joshua Carter home from his job at a Chili's restaurant. Kolanowski's SUV was traveling more than seventy-two miles per hour in a forty-five-miles-per-hour zone when she ran the red light, and Lundy's car was traveling approximately eighteen miles per hour as he accelerated into the intersection.

Carter, who was in the front passenger seat, suffered a fracture at the base of his skull that tore the major blood vessels in that area. As a result, he suffered hemo-aspiration, which means that blood accumulated in his lungs and

2

was "blown out" through his nose and mouth. He was dead on the scene. Arlington firefighter David Jasper had to remove Carter's body from the passenger side of the car in order to reach Lundy in the driver's seat. Lundy, who was alive but in critical condition, was transported to John Peter Smith Hospital. Lundy was twenty-one years old at the time, and Carter was twenty years old.

At the scene, Kolanowski told Arlington firefighter Xavier Flores that she was in a hurry to get home to her dogs and asked Flores where her dogs were. Flores noticed an odor of alcoholic beverage on her breath. She was taken to the hospital, where she talked to Officer Chad Hickey. Kolanowski told Officer Hickey that she had consumed a couple of beers earlier in the afternoon; then had gone to G Willikers bar and consumed three or four rum and Diet Coke drinks there; had gone to another bar, where she had consumed more drinks; and had been dropped off at her car at G Willikers before leaving to go home. Officer Hickey arrested Kolanowski, and she consented to a blood draw. The results of the blood test showed that her blood alcohol concentration was 0.177, more than twice the legal limit in Texas.[2]

Lundy remained in the hospital for eighty-five days, two months of which he was in a coma. As a result of the collision, he suffered a broken collarbone, shoulder blade, elbow, and ribs; a skull fracture; a facial fracture of his right

---

[2]*See* Tex. Penal Code Ann. § 49.01(2)(B) (Vernon 2003) (defining intoxication as having an alcohol concentration of 0.08 or more).

sinus; a broken tooth; cervical fractures; a crushed pelvis; a lacerated liver; damage to his kidney and spleen; bruises on his heart and lungs; and two brain injuries. He was quadriplegic after the wreck, but after extensive therapy, he was considered paraplegic at the time of trial because he had regained full use of his right arm and hand and limited use of his legs and his left arm and hand. His brain injury will likely prevent him from walking again and affected his cognitive functioning and speech. At the time of trial, Lundy lived with his mother and stepfather and received outpatient therapy.

During the punishment phase of trial, the State offered into evidence as State's Exhibit 19A a videotape created with footage taken from the red light camera maintained at the intersection of South Cooper and Southwest Green Oaks. The videotape shows, in real-time speed and in varying degrees of slow motion, Kolanowski's SUV enter the intersection and hit Lundy's car. The State also offered into evidence approximately twenty photographs depicting the scene of the accident and the vehicles after the crash. Kolanowski asserted rule 403 objections to the videotape and two of the photographs from the scene, which the trial court overruled.

### III. LAW ON ADMISSIBILITY OF EVIDENCE AND STANDARD OF REVIEW

Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure governs the admissibility of evidence during the punishment phase. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010). It provides that "[r]egardless of the plea and whether the punishment be assessed by the judge

4

or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing . . . ." *Id.* As the Texas Court of Criminal Appeals has explained,

> [B]ecause the jury's decision in a non-capital case does not involve a discrete finding, the relevance of evidence cannot be determined by a deductive process but rather is a function of policy. The policies that operate during the punishment phase of a non-capital trial include (1) giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant; (2) the rule of optional completeness; and (3) whether the appellant admits the truth during the sentencing phase. As a result, we have explained that relevance during the punishment phase of a non-capital trial is determined by what is *helpful* to the jury.

*Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (footnotes omitted).

A trial court must decide whether the probative value of the evidence is substantial or slight, and in the latter case, whether the proffer is made solely to unfairly prejudice or mislead the jury or confuse the issues in the case. *See* Tex. R. Evid. 403; *Gordon v. State*, 784 S.W.2d 410, 412 (Tex. Crim. App. 1990). Texas Rule of Evidence 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006). A rule 403 analysis should include, but is not

5

limited to, the following factors: (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Id.*

We review a trial court's rulings on the admission of evidence, including the admission of photographs, under an abuse of discretion standard and will not reverse absent a clear abuse of discretion. *Id.* at 786; *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). If the trial court's decision to admit the evidence lies within the zone of reasonable disagreement, then the decision must be upheld. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

## IV. ADMISSIBILITY OF EVIDENCE AT PUNISHMENT

In a single issue, Kolanowski argues that State's Exhibits 9, 14, and 19A were inadmissible under rule 403 because she had already pleaded guilty and the State did not need the evidence. State's Exhibit 9 is a photograph of the scene that shows Carter's body lying on the ground beside Lundy's car after being removed from the car; a blanket covers his face and torso. State's Exhibit 14 is a close-up photograph of the interior of the passenger side door of Lundy's vehicle, showing blood splattered on the window and door. State's Exhibit 19A, the videotape, shows Kolanowski's SUV enter the intersection and hit Lundy's vehicle on the driver's side at real time speed of 30 frames per second, at half

speed of 15 frames per second, at quarter speed of 7.5 frames per second, and at 1.5 frames per second.

### A. State's Exhibit 19A—The Videotape

Kolanowski pleaded "not true" to the deadly weapon allegations in both indictments, and consequently, the State was required to prove that she had used or exhibited her SUV as a deadly weapon during the commission of the offenses.  The videotape was highly probative of her use of the SUV as a deadly weapon.  In fact, Kolanowski points out on appeal that "the very point of the video was to show the jurors the actual impact between the vehicles that could not be seen in the real time version due to the speed of the accident[.]"  Moreover, the videotape was not gruesome or grotesque; it was not likely to impress the jury in some irrational, but nevertheless indelible way; and it was very short in length. *See Shuffield*, 189 S.W.3d at 787.  We hold that the trial court did not abuse its discretion by admitting the videotape over Kolanoski's rule 403 objection.  *See id.* at 786; *Apolinar*, 155 S.W.3d at 186.

### B.  State's Exhibits 9 and 14—The Photographs

Like other demonstrative evidence, photographs should assist the factfinder with its decision whether that is deciding guilt or punishment; a photograph should add something that is "relevant, legitimate, and logical to the testimony that accompanies it" and that assists the factfinder in its decision-making duties. *Erazo*, 144 S.W.3d at 491.   In general, photographs are admissible if verbal testimony about the matter shown in the photographs would

7

be admissible and the probative value is not outweighed by rule 403 counter-factors. *Threadgill v. State*, 146 S.W.3d 654, 670–71 (Tex. Crim. App. 2004); *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997); *see* Tex. R. Evid. 403.

In a rule 403 analysis of the trial court's admission of photographs, we should consider the number of photographs, the size of the photographs, whether they are in color or black and white, the detail shown in the photographs, whether the photographs are gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment. *Williams*, 958 S.W.2d at 196. Courts consistently recognize that the degree of gruesomeness of a photograph is determined, to an extent, by the gruesome nature of the facts of the offense itself. *See id.*; *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995).

In this case, the two photographs at issue are both 11x14 color photographs. They are only two of twenty-three photographs introduced at trial. They are disturbing but depict nothing more than the reality of the crime committed. *See Williams*, 958 S.W.2d at 196; *see also Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001) ("Although appellant also claims unfair prejudice, we find that the videotape simply reflects the gruesomeness of the crime—and that is not a sufficient reason for excluding the evidence."), *cert. denied*, 539 U.S. 916 (2003); *Sonnier*, 913 S.W.2d at 519 ("But when the power

of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence."). The jury heard unobjected-to testimony about the matters shown in the photographs, including how Carter's lungs filled with blood, which was blown from his mouth and nose in his last breaths, and how his body had to be removed so that firefighters could reach Lundy. *See Threadgill*, 146 S.W.3d at 670–71; *Williams*, 958 S.W.2d at 195. We hold that the trial court did not abuse its discretion by admitting State's Exhibits 9 and 14 over Kolanoski's rule 403 objection. *See Shuffield*, 189 S.W.3d at 786; *Apolinar*, 155 S.W.3d at 186.

Even if the trial court had abused its discretion by admitting State's Exhibits 9 and 14, Kolanowski was not harmed as a result. Because any error in the admission of the photographs is not constitutional, rule 44.2(b) is applicable. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). When conducting a rule 44.2(b) harm analysis, we review the record as a whole, including any testimony or physical evidence admitted for the jury's

9

consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

During the punishment phase of Kolanowski's trial, the State presented evidence that Kolanowski's blood alcohol concentration was more than twice the legal limit, that she was traveling almost thirty miles per hour over the posted forty-five-miles-per-hour speed limit when she ran the red light, and that she kept asking about her dogs after the accident.

Lundy's mother testified extensively about her son's injuries and his slow recovery process. According to his mother, Lundy has relearned speaking, swallowing, brushing his teeth, and feeding himself, but he probably will not walk again. At the time of trial, he could take some steps with the help of a walker and someone holding his belt. He could also move from his wheelchair to a mat or bed by himself. Lundy did not have insurance at the time of the collision, and he was not able to stay in long-term acute care. Before the collision, Lundy was 6'5", tan, physically active, and outgoing. Lundy also testified that he liked to play disk golf, basketball, and sand volleyball, as well as "just swim and do stuff outside." His goals are to play disk golf again, talk and walk normally, jump and run, and go to college.

As we explained above, the jury heard about how blood was blown out of Carter's mouth and nose in his last breaths and about the removal of Carter's

10

body. The State did not ask any witness questions about State's Exhibit 14. Moreover, defense counsel did not object to State's Exhibit 13, which also shows blood spatter in Lundy's vehicle. That photograph was not taken as close-up as State's Exhibit 14; instead, it shows the entire car from the passenger side, with both the front and back passenger doors open. In addition to the blood on the front passenger door, the photograph shows blood splattered on the back passenger window and smeared along the bottom of the back passenger door frame. Thus, even if the admission of the close-up photograph of blood splatter on the passenger side window was error, it could not have inflamed the minds of the jurors given the other similar photograph admitted without objection. *See Purtell v. State*, 761 S.W.2d 360, 371 (Tex. Crim. App. 1988), *cert. denied*, 490 U.S. 1059 (1989).

As Kolanowski points out, she received the maximum confinement term for the intoxication assault conviction and eighty percent of the maximum confinement term for the intoxication manslaughter conviction.[3] Nevertheless, after carefully reviewing the record as a whole, including the extensive testimony regarding the events surrounding the collision and the nature of the injuries to Carter and Lundy and including the other photographs admitted into evidence,

---

[3]The applicable range of punishment for intoxication manslaughter is confinement of not more than twenty years or less than two years and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ 12.33, 49.08(b) (Vernon Supp. 2010). The applicable range of punishment for intoxication assault is confinement of not more than ten years or less than two years and a fine not to exceed $10,000. *See id.* §§ 12.34, 49.07(c) (Vernon Supp. 2010).

11

we conclude that the challenged photographs, even if improperly admitted, had no influence, or at most a very slight influence, on the jury. *See Motilla*, 78 S.W.3d at 355; *Solomon*, 49 S.W.3d at 365; *Johnson*, 967 S.W.2d at 417. Consequently, we hold that any error in the admission of the two photographs taken at the scene was not harmful. *See* Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271.

Having addressed all of Kolanowski's complaints, we overrule her sole issue.

## V. CONCLUSION

Having overruled Kolanowski's sole issue, we affirm the trial court's judgments.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 21, 2011

12