IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 73,204






ARTHUR LEE BURTON, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM HARRIS COUNTY






 Johnson, J., delivered the opinion of the Court, in which Meyers, Price, Keasler,
Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J., and Womack, J., concurred.


O P I N I O N



 In June 1998, a jury convicted appellant of capital murder. Tex. Penal Code § 19.03(a). 
Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article
37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071, § 2(g). (1) On direct
appeal to this Court, we affirmed the conviction, but vacated the sentence and remanded the cause to the
trial court for a retrial on punishment only. Burton v. State, No. 73,204 (Tex. Crim. App. Mar. 7,
2001)(not designated for publication). (2) On retrial, in accord with the jury's answers to the special issues,
the trial judge sentenced appellant to death. Art. 37.071, §§ 2(b), 2(e), and 2(g). Direct appeal to this
Court is automatic. Art. 37.071, § 2(h). Appellant raises five points of error, including a challenge to the
sufficiency of the evidence to support the jury's finding that he would be a continuing threat to society. Art.
37.071, § 2(b). We affirm.

STATEMENT OF FACTS


 Shortly after 7:00 p.m. on July 29, 1997, Nancy Adleman left home to go on a short jog along the
bayou near their house. Around 7:20 p.m., Sharon Lalen was watching her children play by some heavy
equipment near the bayou. When she turned around, she was startled by a dirty and angry-looking man
on a bicycle standing very close to her. Lalen said, "Hello," but the man just gave her a mean look. Feeling
threatened by the encounter, Lalen called her children and went home. As she was calling her children,
Lalen saw Adleman jogging along the bayou. Lalen later identified the man on the bicycle as appellant.

 The police discovered Adleman's body the next morning in a hole about three to four feet deep,
located in the heavily wooded area off the jogging trail along the bayou. Her shorts and panties had been
removed and discarded some distance away from the body, leading the police to believe that she had been
sexually assaulted. Adleman had been strangled with her own shoelace, and her body looked as if she had
been badly beaten.

 When initially approached by Deputy Sheriff Benjamin Beall, appellant denied that he ever rode
his bicycle along the bayou, and he denied killing Adleman. Beall confronted appellant with inconsistencies
in the evidence he had collected, and appellant eventually confessed to the crime. In his written statement,
appellant admitted attacking a jogger, dragging her into the woods, and choking her until she was
unconscious. He then removed her shorts and underwear and attempted to have sex with her. When she
regained consciousness and began screaming, appellant again choked her into unconsciousness and
dragged her into a hole. Appellant began to leave, but when he saw another person walking nearby, he
returned and strangled the jogger with her own shoelace.

 In addition to the facts of the crime, the state presented evidence that, in 1988, when appellant was
eighteen, he had participated in thirty-nine burglaries of vehicles and outbuildings in a single month. 
Appellant and his co-defendants had stolen guns, radios, fishing equipment, calculators, and other items. 
At times, the perpetrators would not take anything; they would just go through any papers in the car and
then destroy the inside of the vehicle. Finally, appellant's brother testified that he knew that appellant used
marijuana and sold cocaine when appellant lived in Arkansas.

SUFFICIENCY OF EVIDENCE OF FUTURE DANGEROUSNESS


 In his third point of error, appellant complains that the evidence presented at trial was legally
insufficient to support the jury's finding that he would be a future danger. See Art. 37.071 § 2(b)(1). In
reviewing the sufficiency of the evidence at punishment, this Court looks at the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have believed beyond a
reasonable doubt that appellant would probably commit criminal acts of violence that would constitute a
continuing threat to society. Jackson v. Virginia, 443 U.S. 307 (1979); Allridge v. State, 850 S.W.2d
471, 487 (Tex. Crim. App. 1991), cert. denied, 510 U.S. 831 (1993). A jury can rationally infer future
dangerousness from the circumstances of the offense and the surrounding events alone. Bell v. State, 938
S.W.2d 35, 41-42 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 (1997); Sonnier v. State, 913
S.W.2d 511, 516-17 (Tex. Crim. App. 1995).

 At trial, the jurors heard testimony that appellant first appeared behind Lalen, leaving only when
she turned and talked to him face to face. Lalen was so alarmed by the encounter that she called her
husband at work and asked him to come home. Farther down the trail, appellant rode up behind another
lone female, grabbed her from behind, dragged her into the woods, strangled her into unconsciousness, then
tried to sexually assault her. Eventually, he strangled her.

 When the police questioned him about the crime, he at first denied any knowledge or responsibility. 
He confessed only when the police confronted him with several inconsistencies in his story. Although
appellant's criminal history consisted only of numerous burglaries committed years earlier, a rational jury
could have inferred from the apparent randomness and unpredictability of the instant crime that there was
indeed a probability that appellant would commit future criminal acts of violence that would constitute a
continuing threat to society. Under these facts, we hold the evidence legally sufficient to support the jury's
affirmative answer to the future-dangerousness issue. Jackson, 443 U.S. 307; Martinez v. State, 924
S.W.2d 693, 696-97 (Tex. Crim. App. 1996). Point of error three is overruled.

ADMISSION OF EVIDENCE


 In his first and second points of error, appellant claims that the trial court violated his rights under
the Fifth and Sixth Amendments to the United States Constitution when it admitted statements he made to
a prison sociologist during a classification interview. Although appellant does not specifically set out the
statements about which he complains, his argument highlights two statements that he made referring to
extraneous offenses and the answer he gave regarding why he committed the instant offense. 

 During the second day of trial, the court held a hearing outside the presence of the jury to consider
the admissibility of certain records provided by the Texas Department of Criminal Justice - Correctional
Institutions Division (TDCJ-CID) and the accompanying testimony from prison sociologist J. P. Guyton. 
The records reflected appellant's rationale for the instant offense; it was "just something I couldn't help[.]"
They also contained appellant's admission that he had been using marijuana since he was sixteen years old
and had been selling cocaine since age seventeen. Defense counsel objected to the records on the grounds
that "this extraneous offense is going to come in through interrogation of our client without warnings or
benefit of counsel and we believe that it should not be admitted on that basis."

 Guyton then took the stand and told the court that he worked in the sociology department at
TDCJ-CID. He explained that his job was to interview each incoming inmate in order to compile a social
and criminal history for use in classification. When the "reception and diagnostic committee" classified an
inmate, they determined which unit he should be assigned to and which custody level he should be assigned
on that unit in order to best fit the inmate's security, educational, and medical needs. Information about
drug and alcohol use was routinely elicited so that the drug and alcohol counselors on the units could
determine if a particular inmate needed treatment. This information was also used by the Board of Pardons
and Paroles to assess whether it should require any counseling before the inmate's release. Finally, the
inmate was asked why he committed the offense for which he was sentenced. The same questions were
asked of every inmate, and the information obtained was not used to file charges on the inmate. At the end
of the testimony, defense counsel stated:

 Judge, if we have just a moment, I just want to make sure I made all my objections
clear on Mr. Guyton's testimony as to the extraneous offense. We argue that it's not an
offense which they can prove, they can't make the test, as required by case law, as the
Court is well aware, to be able to offer that admission. In addition, it's hearsay. And for
those reasons we object.


Appellant did not reiterate his earlier complaint that the information about the extraneous offenses was
gleaned through a custodial interview without the benefit of Miranda warnings or counsel. Nonetheless,
we hold that his earlier complaint preserved his Fifth and Sixth Amendment complaints for review on
appeal, but only with regard to the admissibility of the two extraneous offenses mentioned during the
interview. Any complaint appellant has about other information revealed during the interview has not been
preserved for appeal because appellant confined his objections to extraneous offenses. (3) Tex. R. App. P.
33.1.

 In his first two points of error, appellant claims a violation of his Fifth and Sixth Amendment rights
in the admission of statements that he had made to Guyton during the prison interview. As noted above,
appellant preserved his Fifth and Sixth Amendment complaints for review on appeal only with regard to
the admissibility of the two extraneous offenses, using marijuana and selling cocaine, mentioned during the
interview.

 During re-trial, appellant's brother testified without objection that he knew about appellant's
marijuana use and cocaine sales. It is well settled that when evidence similar to that which was objected
to is introduced without objection, the defendant is not in position to complain on appeal. Stoker v. State,
788 S.W.2d 1, 12 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951 (1990). We have more recently
stated that "when a court has overruled an objection to evidence, the ruling usually will not be reversible
error when the same evidence is subsequently admitted without objection[;]" i.e. "overruling an objection
to evidence will not result in reversal when other such evidence was received without objection, either
before or after the complained-of ruling[, ...] whether the other evidence was introduced by the defendant
or the [s]tate." Leday v. State, 983 S.W.2d 713, 717-18 (1998). (4) Accordingly, appellant's first and
second points of error, claiming Fifth and Sixth Amendment violations, are overruled.

 Appellant complains in his fourth and fifth points of error that the admission of evidence regarding
the "Texas Seven" prison escapees and their murder of a peace officer during their "escape rampage" was
irrelevant to any special issue and violated his Fourteenth Amendment right to due process. After the state
rested its case, the defense called a corrections consultant, Steve Martin, to testify about the operation of
Texas prisons. During direct examination, Martin opined that the longer a prisoner's sentence is, the more
incentive he may have to try to escape. On cross-examination, the state expanded on Martin's remarks
about the possibility of escapes from the prison system, at one point bringing up the infamous "Texas
Seven." At no time during this testimony did appellant object to this evidence. Appellant has failed to
preserve this issue for our review. (5) Tex. R. App. P. 33.1. Points of error four and five are overruled.

 We affirm the judgment of the trial court.

 Johnson, J.

Delivered: May 19, 2004

En banc

Do Not Publish
1. Unless otherwise indicated all references to Articles refer to the Texas Code of Criminal Procedure.
2. The original opinion on direct appeal was handed down on October 25, 2000. However, this opinion was
later withdrawn and a new opinion issued on March 7, 2001.
3. Appellant asserts that a pretrial motion to suppress his confession preserved error on all of the
statements he made to Guyton because it referred to all "statements made by the Defendant." Even assuming that
this motion included statements made outside his confession, a notation on the order signed by the judge indicates
that appellant withdrew this motion in open court. Therefore, the motion preserves nothing.
4. We note that an exception to this rule is that a defendant may respond to extraneous offense evidence
admitted over objection. Leday, supra at 718 n.9. However, in this case, appellant was not responding to the
extraneous offense evidence; his brother's testimony was elicited by the state on cross-examination.
5. Appellant asserts that he preserved this issue for review via a pretrial motion to exclude extraneous
offense evidence and a trial motion to preclude the state's use of specific instances of misconduct. However, these
motions addressed extraneous acts purportedly committed by appellant and "malevolent small-town rumor" but
made no mention of the "Texas Seven." As discussed above, when Martin was questioned and testified about the
"Texas Seven," appellant made no objection.