

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00167-CR

DONTREY RAY WALKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 52408-A

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

Dontrey Ray Walker pled guilty to the offense of murder and elected to have the jury assess his punishment. Following a punishment trial, the jury assessed a sentence of sixty years' confinement in prison. Walker appeals, maintaining (1) that the trial court's admission of the victim's autopsy photographs was reversible error, (2) that the State's interjection of facts not in evidence during its closing argument warrants a reversal, and (3) that the trial court erred when it assessed attorney fees against Walker. Because the trial court's admission of the autopsy photographs was not error and the State's closing argument does not warrant reversal, we affirm the trial court's judgment. However, because we find that the bill of costs mistakenly includes an assessment of attorney fees that was not included in the trial court's judgment, we modify the bill of costs by deleting that assessment.

## I.    Discussion

In its indictment, the State alleged that, on or around June 15, 2021, Walker intentionally and knowingly caused Paige Martin's death by strangling her with his hands, thereby impeding her breathing and blood circulation. At trial, Dr. Tasha Greenberg, the medical examiner who performed Martin's autopsy, testified that Martin suffered multiple injuries. Martin sustained blunt force injuries and injuries consistent with chemical burns. She had a laceration near her eyebrow, chemical burns on her neck, and bruising to her arms. Although Martin sustained multiple injuries, Greenberg testified that strangulation caused her death.

William Smeltzer, a detective with the Longview Police Department (LPD), testified that he processed the crime scene on June 15. Smeltzer testified that Martin's body was found in a

bedroom of a duplex where Walker had been staying for about two weeks. Smeltzer noted that Martin's shirt looked wet, and he believed the wet substance was bleach because, "[a]s soon as [he] walked in the room, [he] could smell bleach. And then there was a bleach bottle next to the body." According to Smeltzer, Martin's body was bruised and appeared to have been chemically burned.

Dustin Ashworth, a LPD detective, interviewed Walker following the incident.[1] Walker told Ashworth that he and Martin had been arguing over "the way [he] packed her little girl's clothes." According to Walker, Martin hit him first, and then he choked her with both of his hands until she passed out.[2] When Walker saw Martin "turn colors," he stopped choking her. Walker said that he did not intend to kill Martin and that he "[did not] even hit girls." He did, however, concede that he pushed Martin during their argument. Walker said that he did not attempt to clean up the scene and that he did not know how the bottle of bleach got there. After the incident, Walker changed his clothes and then left for Houston in Martin's vehicle, leaving Martin's little girl alone in the duplex. According to Walker, Martin had just ended their relationship three weeks before the incident, but he was fine with the break-up.[3]

Walker's sister, Tyania, testified that Walker had been a good big brother during their formative years. According to Tyania, Walker was funny and quiet, and he was "also [her] best friend." Tyania never knew Walker to be violent and never witnessed him raise his voice or lose

---

[1]The State published the audio recording of the interview for the jury's benefit.

[2]Walker said that, before the incident, there had never been any violence in their relationship.

[3]The State presented several more witnesses. Based on the issues before us, a recitation of their testimony is not necessary.

his temper. Tyania said that Walker had never been "in trouble with the law." According to Tyania, Martin was Walker's first true love. Tyania said that she spent a significant amount of time with the couple and that they got along well most of the time. On cross-examination, Tyania stated that she had been "friends" with her brother on Snapchat. Tyania was aware that Walker had posted a recording on Snapchat that showed him swinging a knife and "[doing] some crazy things." Tyania believed that, at the time he posted the recording, Walker was upset because his relationship with Martin had just ended.

Walker's stepsister, Ebony, testified that Walker was quiet and funny, never raised his voice, and was a good student. Ebony said that Walker's behavior toward Martin on the day of the incident was wholly out of character for him. Ebony stated that Walker was good with children and that he had treated Martin's daughter like she was his own child.[4]

A.     **The Trial Court Did Not Err In Admitting Martin's Autopsy Photographs**

In his first point of error, Walker contends that the trial court erred when it admitted State's exhibit 4, which contained sixteen photographs of Martin's autopsy. According to Walker, the prejudicial effect of the photographs substantially outweighed their probative value.[5] We disagree.

This Court reviews a trial court's admission of evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). We give trial courts wide discretion when deciding admissibility of photographs. *Sonnier v. State*, 913 S.W.2d 511, 518

[4]Walker presented several more witnesses at trial, mostly family and friends. In large part, their testimony corroborated Tyania's and Ebony's testimony. However, based on the issues before this Court, a recitation of their testimony is not necessary.

[5]Walker does not argue that the photographs were irrelevant.

4

(Tex. Crim. App. 1995). A trial court abuses its discretion when its ruling falls outside the zone

of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)

(op. on reh'g).

Under the Texas Rules of Evidence, relevant evidence is generally admissible. TEX. R.

EVID. 402. With respect to the relevance of photographic evidence, the Texas Court of Criminal

Appeals instructs,

> A photograph should add something that is relevant, legitimate, and logical to the
> testimony that accompanies it and that assists the jury in its decision-making
> duties. Sometimes this will, incidentally, include elements that are emotional and
> prejudicial. Our case law is clear on this point: If there are elements of a
> photograph that are genuinely helpful to the jury in making its decision, the
> photograph is inadmissible only if the emotional and prejudicial aspects
> substantially outweigh the helpful aspects.

*Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

Under Rule 403 of the Texas Rules of Evidence, even relevant evidence may be excluded

if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R.

EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that

relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389 (op.

on reh'g). Rule 403 requires both trial and reviewing courts to analyze and balance "(1) the

probative value of the evidence; (2) the potential to impress the jury in some irrational, yet

indelible, way; (3) the time needed to develop the evidence; [and] (4) the proponent's need for

the evidence." *Erazo*, 144 S.W.3d at 489.

> In making this determination, we consider factors including: the number of
> exhibits offered, their gruesomeness, their detail, their size, whether they are
> black and white or color, whether they are close-up shots, whether the body is

5

naked or clothed, the availability of other means of proof, and other circumstances unique to the individual case.

*Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).

Walker maintains that the trial court abused its discretion when it admitted the photographs because they were "clearly inadmissible[] and prejudicial." Specifically, Walker claims that the photographs showed "mutilation" of Martin's body that he did not cause. According to Walker, the photographs misled "the jury to reject the special issue of sudden passion and assess a much higher punishment" range.

Walker pled guilty to the charge of murder, thereby admitting that he caused at least some of the injuries that resulted in Martin's death.[6] We presume that, when he references "mutilation" that he did not cause, he is referring either to an alleged injury that occurred during the autopsy procedure or an alleged injury that was caused by some unknown assailant.[7] Regardless, we find no evidence of "mutilation" in any of the sixteen photographs. All of the photographs are color images, with the majority of them showing the nature of Martin's wounds. The photographs showed (1) bruising on Martin's arms and hips, (2) chemical burns to her body, and (3) bruising on her neck and blood coming from her nose, which are both consistent with someone who has been strangled. The photographs were taken from varying perspectives, angles, and distances. However, there were very few photographs that showed Martin's

---

[6]Before the punishment trial began, Walker pled guilty. The trial court asked, "And I believe -- by signing the paperwork you are acknowledging that you are guilty of murder; is that correct?" Walker answered, "Yes, sir." Walker also conceded that he signed the stipulation of evidence, which asserts that, on June 15, 2021, he intentionally and knowingly caused Martin's death by strangulation.

[7]Walker also complains of State's exhibit 4A, which contained additional photographs of Martin's autopsy. However, State's exhibit 4A was a "Record Only" exhibit. Consequently, it was not available for the jury's review, and we do not consider it in our analysis.

6

unclothed body and, to the extent there were such photographs, they were taken to show the injuries she sustained. Furthermore, the testimony at trial was consistent with the photographs of Martin's injuries, so the photographs did not have the potential to confuse the jury or "to impress the jury in some irrational, yet indelible, way." *Erazo*, 144 S.W.3d at 489. Likewise, multiple witnesses testified about Martin's injuries, and viewing the autopsy photographs would have helped the jury better understand the extent of those injuries. Lastly, the State did not use an inordinate amount of time to introduce the photographs, especially considering the nature of the injuries Martin sustained.

The photographs helped the jury to better understand what occurred during the incident, the exact nature of Martin's injuries, and the extent to which Walker should be required to take responsibility for his actions. We, therefore, find that the photographs were relevant in determining Walker's punishment and that they were more probative than prejudicial. Accordingly, the trial court did not abuse its discretion when it admitted the photographs into evidence.

We overrule Walker's first point of error.

**B.      There Was No Reversible Error in the State's Closing Argument**

In his second point of error, Walker argues that the State's closing argument contained references to facts that were not in evidence and that those references amounted to reversible error. We disagree.

First, Walker contends that "the State suggested to the jury that [he] had been sexually violent with Martin the day of her death." Walker asserts that, "[u]ndoubtedly, the prosecutor's

7

suggestion to the jury about sexual violence by Appellant not supported by evidence was improper." In its final closing, the State argued,

> So the next step. This is the horrible part that the Defense didn't even mention to you, and it [is] so important. He brags he had sexual intercourse with her. Exhibit 21. Remember Exhibit 21, they found semen on that swab. I do not [know] how it got there. The only person I could ask, was murdered.

> Her hips, badly bruised. I do not know why. The only person who can tell us, [was] brutally murdered. Her arms held down in two different places so hard, it bruised her. And I am sorry for showing this to you again. I take no joy in it. But I don't know what happened.

Walker objected, asserting that the State had "insinuate[ed]" that Walker had been sexually violent with Martin. The record does not show whether Walker received a ruling from the court. That said, immediately after Walker's objection, the trial court called the parties to the bench and proceeded to have a discussion off the record.[8] After going back on the record, the trial court immediately instructed the jury as follows:

> So ladies and gentlemen of the jury, I'm going to give you an oral instruction. It's in the Jury Instructions that I've given you that you are to -- you are the judges of the evidence. You are to render the evidence and decide this case by what you think the evidence was and what the evidence shows.

"In general, proper jury argument includes four areas: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement. To constitute reversible error, the argument must be manifestly improper or inject new, harmful facts into the case." *Hudson v. State*, 128

---

[8]The State contends that Walker waived his argument on appeal because he failed to obtain a specific ruling on his objection. Because the record is somewhat unclear, we will assume, without finding, that the trial court overruled Walker's objection, thereby preserving his argument for our review.

S.W.3d 367, 377 (Tex. App.—Texarkana 2004, no pet.) (citing *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000)).

During Ashworth's interview with Walker, Walker explained that, when he left the residence, he took Martin's cell phone with him. He also admitted that he used her cell phone to send text messages. At trial, Ashworth testified that there were several text messages on Martin's phone that had been sent and received after her death. Specifically, Walker sent a text to a person referred to as "Stank," which stated, "We just finish[ed] f*cking." Stank responded by sending a laughing emoji, to which Walker replied, "You really thought she wanted you[?]" Walker also asked Stank if he wanted to "see some videos [he could] show [him]."

Based on some of Martin's injuries and the texting conversation between Walker and Stank,[9] the State's "suggestion" amounted to permissible argument that was based on a reasonable deduction drawn from the evidence presented at trial. Moreover, the trial court orally instructed the jury that it was to consider only the evidence it received during trial. The court also included a similar written instruction in its charge to the jury. In the absence of evidence "to the contrary, we presume that the jury followed the trial court's instructions." *Johnson v. State*, 370 S.W.3d 100, 105 (Tex. App.—Fort Worth 2012, no pet.) (citing *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003)).

Next, Walker complains that the State made an improper comment on the amount of time it took to strangle Martin. Specifically, Walker directs us to the following argument by the State:

---

[9]The jury also heard testimony that a sexual assault examination had been performed on Martin. Although, the examination revealed male DNA on her body, there was no comparison done to determine whether the DNA belonged to Walker.

9

After she's been beaten, and you saw how bloody that made her. After, according to this man, he F'd her, he strangles her. Okay? She only weighs 100 pounds. And we heard from Dr. Greenberg, it's about 30 seconds for her to lose consciousness. And I want us to experience 30 seconds. And imagine being strangled for 30 seconds. Because that's what happened to Ms. Martin.

(*30-second pause in proceedings*)

. . . . And she's no longer awake.

Did Dontrey say, "Oh, my gosh, in my sudden passion, I just hurt this person. Let me call the ambulance." That's not what he does.

She said minutes. And I will give him the benefit of the doubt. The lowest number of minutes is 2. So for another 90 seconds, lets imagine what really happened when Dontrey continued to strangle this woman.

Walker objected, stating, "Dr. Greenberg said she couldn't tell on this particular case." The trial court overruled his objection.

At trial, the following colloquy between the State and Greenburg took place:

*Q.* [By the State] If you were to strangle someone until they just pass out and lose consciousness, can you tell me in your expertise, how long that would take just to lose consciousness?

*A.* [By Greenburg] That can take anywhere from a few seconds up to perhaps half a minute of continued pressure to lose consciousness.

*Q.* At that point at 30 seconds, if I were to stop applying pressure, what would happen, Doctor, in your expertise?

*A.* In most cases, someone would regain consciousness if they have lost consciousness.

. . . .

*Q.* How long, in your expertise, would someone need to strangle someone to cause enough blood loss that they were deceased when they released pressure?

10

*A.* So it's -- they're causing hypoxia, or lack of oxygen to the brain, is what ultimately causes injury and death. And so that takes minutes for that process to lead to death.

*Q.* So some number of minutes, plural, is how long pressure had to be applied for this situation to occur, Doctor?

*A.* Yes.

In this instance, the State's assertion to the jury regarding the amount of time it took for Walker to kill Martin was clearly a permissible argument based on a reasonable deduction drawn from Greenberg's testimony. Walker's contention to the contrary is without merit.

We overrule Walker's second point of error.

**C.** **The Trial Court Did Not Assess Attorney Fees Against Walker**

In his third point of error, Walker maintains that the trial court erred when it assessed court-appointed attorney fees against him. The State concedes the error.

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only "[i]f the judge determines that a defendant has financial resources that enable [him] to offset in part or in whole the costs of the legal services provided . . . , including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Supp.). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (alteration in original) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Further, "[a] defendant who is determined by the court to remain indigent is presumed to be indigent for the remainder of the proceedings in the case

11

unless a material change in the defendant's financial circumstances occurs." *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010) (alteration in original).

Because the trial court found Walker indigent during the trial proceedings, he was "presumed to remain indigent absent proof of a material change in h[is] circumstances." *Walker v. State*, 557 S.W.3d 678, 689 (Tex. App.—Texarkana 2018, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (Supp.), art. 26.05(g). However, contrary to Walker's position and notwithstanding the State's concession, the trial court did not assess attorney fees against Walker. Rather, the bill of costs mistakenly included an assessment of attorney fees that was not included in the trial court's judgment. We, therefore, modify the bill of costs by deleting the assessment of attorney fees.

## III.    Conclusion

We delete the assessment of $5,227.50 for court-appointed attorney fees from the bill of costs and affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:    July 19, 2023
Date Decided:    July 21, 2023

Do Not Publish

12